GREGORY P. STONE (SBN 78329)
Gregory.Stone@mto.com
BETHANY W. KRISTOVICH (SBN 241891)
Bethany.Kristovich@mto.com
ZACHARY M. BRIERS (SBN 287984)
Zachary.Briers@mto.com
BENJAMIN G. BAROKH (SBN 318629)
Benjamin.Barokh@mto.com
APRIL D. YOUPEE-ROLL (SBN 331761)
April.Youpee-Roll@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for YouTube, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>     vs.<br><br>YOUTUBE, INC.,<br><br>          Defendant. | Case No. 4:20-cv-7493-YGR<br><br>**DEFENDANT YOUTUBE, LLC'S MOTION TO DISMISS**<br><br>Judge:      Hon. Yvonne Gonzalez Rogers<br>Location:   Courtroom 1<br>Date:        January 26, 2021<br>Time:        2:00 PM |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 26, 2021, at 2:00 p.m., or as soon as counsel may be heard, in Courtroom 1, United States Courthouse, 1301 Clay Street, Oakland, California 94612, the Honorable Yvonne Gonzalez Rogers presiding, Defendant YouTube, LLC[1] will, and hereby does, move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Jane Doe's Complaint. The Complaint fails to state a cause of action for either common law negligence or a violation of California's Unfair Competition Law.

YouTube's motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such other argument and evidence as may be presented to the Court prior to or at the hearing on this matter.

DATED: December 2, 2020

MUNGER, TOLLES & OLSON LLP
GREGORY P. STONE
BETHANY W. KRISTOVICH
ZACHARY M. BRIERS
BENJAMIN G. BAROKH
APRIL D. YOUPEE-ROLL

By: _____ /s/ Zachary M. Briers _____
Zachary M. Briers
Attorneys for YOUTUBE, LLC

---

[1] Plaintiff's complaint erroneously named YouTube, Inc., which does not exist.

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION..................................................................................................1

II.  BACKGROUND ................................................................................................2

    A.   YouTube and Its Efforts to Responsibly Manage Content on the Platform..............2

    B.   Plaintiff's Allegations Regarding Her Work for Collabera ......................................3

    C.   Procedural History .................................................................................................3

III. APPLICABLE LAW...........................................................................................4

    A.   Texas Law Governs Plaintiff's Negligence Claims ...............................................4

    B.   The UCL Does Not Apply to Injuries Sustained by Non-California Residents Based on Conduct Occurring Outside of California...............................5

IV.  ARGUMENT.......................................................................................................6

    A.   Plaintiff Fails to State a Cause of Action for Negligence........................................6

        1.   Claim 1:  Plaintiff's First Claim Fails Because Texas Rejects the Abnormally Dangerous Activity Doctrine...................................................7

        2.   Claim 2:  Plaintiff's Claim Based on "Retained Control" Fails Because YouTube Does Not Control Collabera's Workplace Safety Policies....................................................................................................7

            (a)   Plaintiff's Allegations Regarding Training Materials Demonstrate that YouTube Did Not Retain Control Over Safety and Wellness..........................................................................8

            (b)   Plaintiff's Allegations Regarding YouTube's Performance Expectations, Review Platform, and NDA Do Not Demonstrate that YouTube Retained Control Over Safety and Wellness ....................................................................................10

        3.   Claim 3: Plaintiff's Third Claim Fails Because Texas Law Does Not Recognize the Provision of Unsafe Equipment as an Independent Claim .....................................................................................................11

    B.   Plaintiff Failed to State a Claim Under the UCL....................................................12

        1.   California's UCL Does Not Apply to Texas Residents Who Sustained Injuries in Texas..........................................................................12

        2.   Plaintiff's UCL Claims Fail Because They Present No Viable Claim for Equitable Relief ...............................................................................13

            (a)   *Plaintiff's UCL Claims Fail Because Plaintiff Has Not Alleged the Inadequacy of Legal Remedies, and Cannot Do So* ............................................................................................13

# TABLE OF CONTENTS
## (Continued)

Page

(b)  *Plaintiff's Requested Remedies of Medical Monitoring and Treatment Compensation Constitute Damages That Are Not Recoverable Under the UCL*.................................................... 14

(c)  *As a Former Content Moderator, Plaintiff Lacks Standing to Seek Injunctive Relief*.................................................... 15

3.  Plaintiff's Fourth Claim Also Fails Because Common Law Negligence Cannot Form the Predicate for a UCL Claim........................... 16

4.  Plaintiff's Fifth Claim Also Fails Because It Is Preempted By the Workers' Compensation Statute ............................................. 17

V.   CONCLUSION.............................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Page**

**FEDERAL CASES**

*Barth v. Firestone Tire & Rubber Co.*,
    673 F. Supp. 1466 (N.D. Cal. 1987) ......................................................................... 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................... 6

*Croshal v. Aurora Bank, F.S.B.*,
    No. C 13-05435 SBA, 2014 WL 2796529 (N.D. Cal. June 19, 2014) ..................... 16

*Doddy v. Oxy USA, Inc.*,
    101 F.3d 448 (5th Cir. 1996) ..................................................................................... 7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ................................................................................................. 16

*Giovanni v. Bank of Am., Nat'l Ass'n*,
    No. C 12-02530 LB, 2013 WL 1663335 (N.D. Cal. Apr. 17, 2013) ....................... 16

*Guerrero v. Halliburton Energy Servs., Inc.*,
    231 F. Supp. 3d 797 (E.D. Cal. 2017) .................................................................... 16

*In re MacBook Keyboard Litig.*,
    No. 5:18-CV-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ............... 14

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ................................................................................ 4, 5

*Mort v. United States*,
    86 F.3d 890 (9th Cir. 1996) ..................................................................................... 13

*Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*,
    319 F. Supp. 2d 1059 (C.D. Cal. 2003) .................................................................. 16

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ................................................................................................. 14

*Parrish v. Premier Directional Drilling, L.P.*,
    917 F.3d 369 (5th Cir. 2019) ................................................................................... 11

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ........................................................................... 16, 17

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ............................................................................. 13, 14

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .......................................................................................... 15

*Wal–Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................... 16

*Zapata Fonseca v. Goya Foods Inc.*,
   No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ................. 14

*Zinser v. Accufix Rsch. Inst., Inc*,
   253 F.3d 1180 (9th Cir. 2001) ........................................................................ 4, 15

**STATE CASES**

*Am. Tobacco Co. v. Grinnell*,
   951 S.W.2d 420 (Tex. 1997) .................................................................................. 7

*Bell v. VPSI, Inc*,
    205 S.W.3d 706 (Tex. App. 2006) ........................................................................ 10

*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*,
   24 Cal. 4th 800 (2001) .......................................................................................... 17

*Coastal Marine Serv. of Tx., Inc. v. Lawrence*,
   988 S.W.2d 223 (Tex. 1999) ..........................................................................passim

*Dow Chem., Co. v. Bright*,
   89 S.W.3d 602 (Tex. 2002) ................................................................................... 10

*Exxon Corp. v. Tidwell*,
   867 S.W.2d 19 (Tex. 1993) ............................................................................passim

*Gomez v. Saratoga Homes*,
   516 S.W.3d 226 (Tex. App. 2017) ........................................................................ 12

*Goodwin v. Reilley*,
   176 Cal. App. 3d 86 (1985) .....................................................................................4

*Greater Houston Transp. Co. v. Phillips*,
   801 S.W.2d 523 (Tex. 1990) ...................................................................................6

*Hernandez v. Hammond Homes, Ltd.*,
   345 S.W.3d 150 (Tex. App. 2011) ...........................................................................8

*Hewlett v. Squaw Valley Ski. Corp.*,
   54 Cal. App. 4th 499 (1997) .................................................................................. 16

DEFENDANT YOUTUBE, LLC'S MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*Hoechst-Celanese Corp. v. Mendez,*
967 S.W.2d 354 (Tex. 1998). ...................................................................9

*Howarton v. Minn. Mining & Mfg., Inc.,*
133 S.W.3d 820 (Tex. App. 2004) ...........................................................10

*Howell v. Hamilton Meats & Provisions, Inc.,*
52 Cal. 4th 541 (2011) .............................................................................15

*Hughes v. Argonaut Ins. Co.,*
88 Cal. App. 4th 517 (2001) .....................................................................17

*Johnston v. Oiltanking Houston, L.P.,*
367 S.W.3d 412 (Tex. App. 2012) ...........................................................10

*Kinsman v. Unocal Corp.,*
37 Cal. 4th 659 (2005) ...............................................................................4

*Koch Refin. Co. v. Chapa,*
11 S.W.3d 153 (Tex. 1999) .......................................................................11

*Korea Supply Co. v. Lockheed Martin Corp.,*
29 Cal. 4th 1134 (2003) ...........................................................................14

*Kowalski v. Shell Oil Co.,*
23 Cal. 3d 168 (1979) ...............................................................................17

*Lockheed Martin Corp. v. Superior Court,*
29 Cal. 4th 1096 (2003) ...........................................................................15

*Madrid v. Perot Sys. Corp.,*
130 Cal. App. 4th 440 (2005) .............................................................13, 15

*Marshall v. Toys–R–Us Nytex, Inc.,*
825 S.W.2d 193 (Tex. App. 1992) ...........................................................17

*McCann v. Foster Wheeler LLC,*
48 Cal. 4th 68 (2010) .............................................................................4, 5

*McClure v. Denham,*
162 S.W.3d 346 (Tex. App. 2005) ........................................................7, 10

*McKown v. Wal-Mart Stores, Inc.,*
27 Cal. 4th 219 (2002) ...............................................................................4

*Miranda v. Shell Oil Co.,*
17 Cal. App. 4th 1651 (1993) ...............................................................9, 15

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 965 (1993) ................................................................................ 15

*Prather v. Brandt*,
   981 S.W.2d 801 (Tex. App. 1998) ............................................... 4, 6, 7

*Randall Noe Chrysler Dodge, LLP v. Oakley Tire Co.*,
   308 S.W.3d 542 (Tex. App. 2010) ...................................................... 6

*Rodriguez v. Martin Landscape Mgmt., Inc.*,
   882 S.W.2d 602 (Tex. App. 1994) ..................................................... 17

*Shell Oil Co. v. Khan*, the plaintiff
   138 S.W.3d 288 (Tex. 2004). .............................................................. 9

*Sullivan v. Oracle Corp.*,
   51 Cal. 4th 1191 (2011) ..................................................... 5, 12, 13

*Victoria Elec. Co-op., Inc. v. Williams*,
   100 S.W.3d 323 (Tex. App. 2002) ............................................. 11, 12

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................................. 12

DEFENDANT YOUTUBE, LLC'S  MOTION TO DISMISS

## I.   INTRODUCTION

YouTube invests significant resources to keep offensive content off its video platform. YouTube developed complex algorithms to automatically remove content that violates its Community Guidelines.  But algorithms cannot entirely replace human judgment.  As a result, YouTube contracts with several expert companies that specialize in safely providing content-moderation services to online platforms in a variety of different languages.  These specialized contractors hire, train, and manage their employees, provide their employees with an employee assistance program and wellness support services, and ensure their employees have access to workers' compensation coverage.

Content moderators are frontline workers in the effort to protect users from harmful content. They do crucial work by screening videos containing problematic content, such as misinformation, spam, and violence.  It is a difficult and evolving job, which requires significant training and must be done in a safe workplace.  That is why YouTube contracts with companies that specialize in safely providing content-moderation services and protecting their employees.

From 2018 to 2019, Plaintiff was an employee of one of the content-moderation companies, Collabera.  Plaintiff admits that she was "employed solely by Collabera," and that she "has never been employed by YouTube in any capacity."  Compl. ¶¶ 81, 84.  She also acknowledges that Collabera took measures to protect its employees and the workplace, including providing its employees access to wellness counselors.  Notwithstanding these measures, Plaintiff alleges that she developed symptoms associated with anxiety and PTSD.

Plaintiff has not filed any action against her employer, which would be subject to the exclusive no-fault workers' compensation remedy.  Plaintiff instead brought this action against YouTube, asserting claims for negligence and violation of California's Unfair Competition Law (UCL).  Plaintiff's efforts to sidestep the appropriate remedy for workplace injuries must fail.  She has not stated a cause of action against YouTube under either a negligence theory or the UCL.

Plaintiff's negligence claims are governed by the law of Texas, where she lives and where the relevant conduct occurred.  Plaintiff's claims fail because YouTube was not her employer. Notwithstanding YouTube's commitment to treating all workers with respect and dignity, a party,

such as YouTube, "has no duty to ensure that an independent contractor performs its work in a safe manner." *Coastal Marine Serv. of Tx., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999). Rather, YouTube's obligation is to responsibly manage the content on its platform for its billions of users. To honor that obligation, YouTube retains specialized companies, like Collabera, that are experts at safely deploying the human reviewers needed to protect the platform.

Plaintiff's UCL claims fail because the UCL is not applicable to her alleged injuries. Plaintiff is a resident of Texas, performed the relevant content-moderation work in Texas, and sustained her alleged injuries in Texas. The UCL does not apply to the claims of non-California residents for conduct occurring outside of California. Even if the UCL did apply, Plaintiff's claims would fail because she seeks only remedies that are unavailable under the UCL.

## II.    BACKGROUND

### A.    YouTube and Its Efforts to Responsibly Manage Content on the Platform

YouTube is the world's largest online video platform. Every day, users watch more than one billion hours of video on YouTube. More than five hundred hours of content are uploaded to the platform every minute of every day. *See* Compl. ¶¶ 18–19. Despite this incomprehensible scale, YouTube makes it a priority to enforce strict Community Guidelines, which seek to protect users from harmful content, misinformation, harassment, and spam. *See id.* ¶¶ 21, 55.

YouTube is a leader in the effort to keep online platforms free of problematic content. It developed complex, artificial-intelligence (AI) algorithms to identify and remove content that violates the Community Guidelines, such as content that includes misinformation, graphic violence, nudity, or unauthorized reproduction of copyrighted material. The AI-based algorithms frequently remove content automatically, without human review. But on other occasions, human judgment is required. *See* Compl. ¶ 21 (noting that "human judgment is critical to making contextualized decisions on content"). The need for human judgment is particularly acute with respect to content in fast-evolving and context-dependent subject areas, such as misinformation regarding the COVID-19 pandemic. To provide this human judgment, YouTube has contracted with a number of companies that specialize in hiring, training, and supervising content moderators fluent in a variety of languages. *See* Compl. ¶ 118. YouTube does not train, supervise, or pay these content

moderators. *See id.* ¶¶ 81–86. The independent contractors, not YouTube, are responsible for managing the content moderators they employ, including ensuring their safety and wellness, such as by providing counseling and health benefits. *See id.* ¶¶ 57, 83–86.

**B.      Plaintiff's Allegations Regarding Her Work for Collabera**

Plaintiff alleges that she was "employed by Collabera" as a content moderator from "approximately January 16, 2018 until approximately August 24, 2019." Compl. ¶ 15. Plaintiff lives in Travis County, Texas, and alleges that during her period of employment, she performed content-moderation work at a facility in Austin, Texas. *Id.*

Plaintiff does not contend that she was ever employed by YouTube. In fact, she expressly alleges that she was "employed solely by Collabera," *id.* ¶ 81, that she "has never been employed by YouTube in any capacity," *id.* ¶ 84, and that "Collabera directly oversaw all human resources matters concerning Plaintiff," *id.* ¶ 83. Plaintiff "never received any wages from YouTube," nor did she receive any "employee benefits packages" or "wellness benefits" from YouTube. *Id.* ¶ 86. Instead, her wages and benefits came directly from Collabera. For example, Plaintiff alleges that she received a "two-week training" after she was hired, and that, during those trainings, she was introduced to two "on-site Wellness Counselors." *Id.* ¶¶ 55–57.

Plaintiff alleges that as a result of her employment by Collabera, and due to her viewing of graphic content as a content moderator, she suffers psychological trauma including symptoms associated with anxiety and PTSD. *Id.* ¶ 89. She also alleges that the YouTube online review platform she used to review content, as well as Collabera's support and wellness benefits, were poorly suited to protecting her psychological health. *Id.* ¶¶ 54–59, 65–66.

**C.      Procedural History**

On September 21, 2020, Plaintiff filed this putative class action against YouTube in San Mateo County Superior Court, seeking to certify a class of all YouTube content moderators in the United States, excluding any individuals employed by YouTube directly. She brought five claims: three tort claims based on negligence and two claims under the UCL. Plaintiff did not name Collabera as a defendant. YouTube removed the action to this Court on October 24, 2020 under the Class Action Fairness Act, and now moves to dismiss.

## III.   APPLICABLE LAW

### A.   Texas Law Governs Plaintiff's Negligence Claims

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Rsch. Inst., Inc*, 253 F.3d 1180, 1187 (9th Cir. 2001).   When there is a conflict of laws, California applies the law of the state that has the "predominant interest" in the dispute, *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 96–98 (2010), recognizing that "every state has an interest in having its law applied to its resident claimants," *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 592–93 (9th Cir. 2012).   A conflict exists when "the foreign law differs from California law." *McCann*, 48 Cal. 4th at 81.

With respect to Plaintiff's negligence claims, there is a clear conflict between the law of Plaintiff's home state, Texas, and the law of California.   Under both Texas and California law, a hiring entity generally "has no duty to ensure that an independent contractor performs its work in a safe manner." *Coastal Marine*, 988 S.W.2d at 225; *see also Kinsman v. Unocal Corp.*, 37 Cal. 4th 659, 676–77 (2005) (generally "the duty to protect the independent contractor's employees from hazards resides with the independent contractor and not the hirer.")

Although the no-duty rule exists in both Texas and California, Plaintiff attempts to overcome it by alleging exceptions that exist *only* under California law.   For example, Plaintiff alleges that YouTube assumed a duty because content moderation "is an abnormally dangerous activity." Compl. ¶ 101.   While the "abnormally dangerous activity" doctrine serves as a limited exception to the no-duty rule in California, that doctrine has been expressly rejected in Texas. *Compare Goodwin v. Reilley*, 176 Cal. App. 3d 86, 91 (1985) (recognizing exception for "abnormally dangerous activity"), *with Prather v. Brandt*, 981 S.W.2d 801, 804 (Tex. App. 1998) (holding Texas law "does not recognize a cause of action [based on] 'abnormally dangerous' activities.").   Plaintiff similarly alleges that YouTube assumed a duty because it provided Plaintiff "unsafe equipment."   Compl. ¶ 135.   Even accepting Plaintiff's allegation as true, unlike California law, Texas law does not recognize a claim for the negligent provision of unsafe equipment. *Compare McKown v. Wal-Mart Stores, Inc.*, 27 Cal. 4th 219, 225 (2002) (recognizing limited exception when hirer "affirmatively contributes to the injury of an employee of the contractor" by "negligently furnishing unsafe

equipment to the contractor"), *with Coastal Marine*, 988 S.W.2d at 225–26 (considering allegation that hirer owned crane that caused plaintiff-subcontractor's injuries in assessing whether hirer retained control over independent contractor, not as an independent exception to no-duty rule).

Because there is a conflict between Texas law and California law, the Court must assess which jurisdiction has the predominant interest. Plaintiff's allegations make clear that Texas has the predominant interest in this case. "[A] jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders." *McCann*, 48 Cal. 4th at 97–98. "The place of the wrong has the predominant interest"—the place of the wrong being "the state where the last event necessary to make the actor liable occurred." *Mazza*, 666 F.3d at 593 (internal citation omitted). In this case, Texas is where the relevant conduct occurred and where the alleged injury was sustained. Plaintiff lives in Travis County, Texas. Compl. ¶ 15. She performed content-moderation work at facilities in Austin, Texas, *id.*, where she received trainings and interacted with "on-site Wellness Counselors," *id.* ¶ 57. Plaintiff alleges that, as a result of the content-moderation services she provided, she developed severe psychological trauma, *id.* ¶ 89, which causes her to have trouble sleeping and panic attacks, *id.* ¶ 90. These injuries were sustained as a result of work Plaintiff performed in Texas, and the effects are felt by Plaintiff at her residence in Texas.

Plaintiff does not allege she had any contacts with California, or that any of her injuries were sustained in California. In light of the fact that the acts and alleged injury occurred exclusively in Texas, "California's interest in applying its law to residents of foreign states is attenuated." *Mazza*, 666 F.3d at 594. Texas has the "predominant interest" in regulating the alleged conduct, which "occur[ed] within its borders." *McCann*, 48 Cal. 4th at 97–98.

**B.     The UCL Does Not Apply to Injuries Sustained by Non-California Residents Based on Conduct Occurring Outside of California**

The UCL does not apply to the claims of out-of-state plaintiffs for conduct occurring outside of California. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). "Neither the language of the UCL nor its legislative history provides any basis for concluding that the Legislature intended the UCL to operate extraterritorially." *Id.* at 1209 (holding that UCL "does not apply to overtime work performed outside California for a California-based employer by out-of-state plaintiffs").

## IV.   ARGUMENT

Plaintiff's negligence and UCL claims should be dismissed because they fail to plead a cognizable legal theory and fail to allege "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts "consider only the claims of a named plaintiff in ruling on a motion to dismiss a class action complaint prior to class certification." *Barth v. Firestone Tire & Rubber Co.*, 673 F. Supp. 1466, 1476 (N.D. Cal. 1987).

### A.   Plaintiff Fails to State a Cause of Action for Negligence

Plaintiff's first, second, and third causes of action allege that YouTube is liable for negligence. Compl. ¶¶ 98–151. "The threshold inquiry in a negligence case is duty," which is "a question of law." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Plaintiff has failed to allege facts sufficient to demonstrate a duty owed by YouTube.

It goes without saying that Plaintiff was entitled to a safe workplace. YouTube retained a specialized company to perform content-moderation services, and that company in turn took significant precautions to protect the wellbeing of its employees. To the extent Plaintiff has claims for injuries sustained in the course of her employment, those claims are against her employer and subject to the workers' compensation remedy. Plaintiff's negligence claims against YouTube fail because, as she admits, she "has never been employed by YouTube in any capacity," *id.* ¶ 84, and was "employed solely by Collabera," *id.* ¶ 81. These facts are dispositive. "Generally, an employer has no duty to ensure that an independent contractor performs its work in a safe manner." *Randall Noe Chrysler Dodge, LLP v. Oakley Tire Co.*, 308 S.W.3d 542, 545 (Tex. App. 2010).

Recognizing that the no-duty rule bars her negligence claims, Plaintiff attempts to invoke three exceptions to the rule, but each attempt fails.

- *First*, Plaintiff alleges that YouTube is "strictly liable" because content moderation is "an abnormally dangerous activity." Compl. ¶ 99. This claim fails because Texas law "does not recognize a cause of action of strict liability for . . . 'abnormally dangerous' activities." *Prather*, 981 S.W.2d at 804.

- *Second*, Plaintiff alleges that YouTube "retained control over certain aspects of the work." Compl. ¶ 119. This claim fails because it is undisputed that YouTube did not retain "specific

control over the safety and security of the [work], rather than the more general right of control over operations." *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993). In fact, Plaintiff admits that Collabera—not YouTube—provided the wellness-related trainings and counseling that she alleges were deficient. *See* Compl. ¶¶ 57, 83, 86.

- *Third*, Plaintiff alleges that YouTube provided her access to an online content-review platform, which she characterizes as "unsafe equipment." Compl. ¶ 135–37. This claim fails because under Texas law the provision of unsafe equipment does not create an independent exception to the no-duty rule.

Because each of Plaintiff's attempts to invoke an exception to the no-duty rule fails, Plaintiff has failed to state a claim, and her negligence-based causes of action should be dismissed.

1. <u>Claim 1: Plaintiff's First Claim Fails Because Texas Rejects the Abnormally Dangerous Activity Doctrine</u>

Plaintiff's first claim alleges that reviewing "graphic and objectionable content is an abnormally dangerous activity" for which YouTube should be "strictly liable." Compl. ¶¶ 99, 101. Texas has categorically eschewed the "abnormally dangerous activity" doctrine as a basis for strict liability. As the Fifth Circuit noted, "the Texas Supreme Court has clearly rejected strict liability for abnormally dangerous activities." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 462 (5th Cir. 1996); *see also Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997) ("[N]o court has recognized [the abnormally dangerous activity doctrine] as creating viable claims in Texas."); *Prather*, 981 S.W.2d at 804 ("Texas does not recognize a cause of action of strict liability for 'ultrahazardous' or 'abnormally dangerous' activities."). As a result, Plaintiff's first claim fails to state a cause of action and should be dismissed.

2. <u>Claim 2: Plaintiff's Claim Based on "Retained Control" Fails Because YouTube Does Not Control Collabera's Workplace Safety Policies</u>

Plaintiff's second claim asserts a duty based on the theory that YouTube "retained control over certain aspects of the work performed by Plaintiff." Compl. ¶¶ 119–20. To state a claim under the "retained control" exception, it is not sufficient to allege that the defendant "retained control over certain aspects of the work." *Id.* The plaintiff must demonstrate that the defendant retained "control *over the actual activity that resulted in his injury*." *McClure v. Denham*, 162 S.W.3d 346,

352 (Tex. App. 2005) (emphasis added). That was not the case here. Recognizing that content moderators deserve a safe work environment, YouTube contracts with companies specializing in this critically important work specifically because these companies possess institutional knowledge and experience, and are best positioned to ensure content moderators' safety.

Plaintiff's focus on YouTube's general training materials and performance expectations does not demonstrate that YouTube "had specific control over the safety and security of [her working conditions], rather than the more general right of control over operations." *Exxon*, 867 S.W.2d at 23. In fact, Plaintiff acknowledges that Collabera was responsible for her safety and wellness, expressly alleging that she "never received" any "wellness benefits" from YouTube, Compl. ¶ 86, and that "Collabera directly oversaw all human resources matters concerning Plaintiff," *id.* ¶ 83. As a result, Plaintiff's allegations regarding YouTube's training materials and performance expectations fail to state a claim.

<blockquote>(a)    Plaintiff's Allegations Regarding Training Materials Demonstrate that YouTube Did Not Retain Control Over Safety and Wellness</blockquote>

In an effort to demonstrate retained control, Plaintiff focuses on "PowerPoints" YouTube developed and provided to Collabera, which Collabera presented during a two-week training. Compl. ¶ 55. Plaintiff's allegations fail to show that the alleged provision of training materials constitutes retained control for three independent reasons.

*First*, Plaintiff's allegations show that the YouTube-developed training materials are unrelated to health and wellness. In fact, Plaintiff faults YouTube for *not* addressing wellness-related topics, alleging that the training materials spent "little to no time . . . on wellness and resiliency" and that YouTube "failed to train Content Moderators on how to assess their own reaction to the images." *Id.* ¶¶ 54, 57. Plaintiff's belief that the training materials *should have* addressed wellness elides the distinction between a duty and its breach; YouTube cannot owe a duty to protect moderators' wellness without *actual* control over their wellness. The absence of wellness training is not evidence that YouTube actually controlled the wellness of Collabera's employees, but precisely the opposite. *See Hernandez v. Hammond Homes, Ltd.*, 345 S.W.3d 150, 154 (Tex. App. 2011) ("Strowd's knowledge of the risk of roofers' falling and his and appellees' failure to

require fall-protection equipment is not evidence that Strowd and appellees actually exercised control over the manner in which Brito's employees performed their work. Instead, it is evidence that they exercised no control."). Plaintiff acknowledges that the training materials provided only "a brief description of the applicable Community Guidelines," as well as "examples of content" that violated the guidelines. Compl. ¶ 55. The fact that YouTube provided training materials regarding application of its Community Guidelines demonstrates only that YouTube exercised "the more general right of control over" Collabera's deliverables, not "specific control over the safety and security" of Collabera's employees. *Exxon*, 867 S.W.2d at 23.

*Second*, the fact that YouTube "require[d Collabera] to provide YouTube-developed training to all Content Moderators," Compl. ¶ 75, does not show that YouTube exercised operative control over the trainings. Texas courts have repeatedly held that requiring an independent contractor to offer trainings to its employees does not constitute "retained control," even when the hiring entity provides the training materials. For example, in *Shell Oil Co. v. Khan*, the plaintiff was shot by a robber while he was working as a gas station attendant. 138 S.W.3d 288 (Tex. 2004). He brought a claim against Shell, which owned the premises and employed an independent contractor to operate the gas station. The plaintiff alleged that Shell was liable for his injuries because, although it was not his direct employer, it controlled the types of safety-related trainings that he received. *Id.* at 293. The plaintiff pointed to the fact that "Shell distributed a training manual to all dealers and required them to take a training course that addressed security and other topics." *Id.* The Texas Supreme Court held that "requiring independent contractors to comply with general safety practices *and train their employees to do* so cannot constitute a right to control job-site safety." *Id.* at 293–94 (emphasis in original). The same is true here to an even greater degree. Whereas the training materials in *Shell Oil* specifically addressed employee safety, Plaintiff does not allege that the YouTube-developed materials addressed safety. Those were issues left in Collabera's expert control as the entity best suited to keep moderators safe.

*Third*, while YouTube developed some of the training materials, YouTube did not actually train its contractor's employees; the contractor did. Compl. ¶ 75. This further confirms that YouTube did not retain control over Plaintiff's health and safety. In *Hoechst-Celanese Corp. v.*

*Mendez*, for instance, the Texas Supreme Court held, as a matter of law, that a hirer who required its contractor's employees to undergo training on the hirer's policies was not liable to an employee who was injured because of a violation of those policies. 967 S.W.2d 354, 355, 358 (Tex. 1998). So, too, in *Bell v. VPSI, Inc.*, where the court rejected liability stemming from a car accident even though the hirer required "basic driver training/safety awareness orientation." 205 S.W.3d 706, 720 (Tex. App. 2006); *see also Dow Chem., Co. v. Bright*, 89 S.W.3d 602, 611 (Tex. 2002) (requiring "all contract employees . . . to 'be indoctrinated with the [defendant's] safety rules book'" did "not establish actual control"). As in those cases, while YouTube provided certain materials to Collabera, YouTube did not actually assume control of, or responsibility for, training Collabera's employees on health and safety issues.

> (b) Plaintiff's Allegations Regarding YouTube's Performance Expectations, Review Platform, and NDA Do Not Demonstrate that YouTube Retained Control Over Safety and Wellness

In addition to her allegations regarding training materials, Plaintiff attempts to invoke the retained control exception by alleging that YouTube "set[] expectations as to the overall timeframe and accuracy of content review," provided Plaintiff with access to an online "review platform," and required her to sign an "NDA." Compl. ¶ 119. These conditions, she says, exacerbated her risk of developing psychological trauma. *See* Compl. ¶ 62. Even if true, these conditions do not demonstrate that YouTube "had specific control over the safety and security of" Plaintiff's working conditions. *Exxon*, 867 S.W.2d at 23.

The conditions Plaintiff has identified are common supervisory conditions of independent contractor relationships. They do not establish retained control. It is well-established, for example, that setting expectations regarding the timing and quality of the work to be performed does not establish the requisite control. *Johnston v. Oiltanking Houston, L.P.*, 367 S.W.3d 412, 419 (Tex. App. 2012) (promulgating benchmarks on "the timing and sequence of work is in the nature of a general right to coordinate the activities of contractors" and "is not the type of supervisory control that would impose liability"); *Howarton v. Minn. Mining & Mfg., Inc.*, 133 S.W.3d 820, 825–26 (Tex. App. 2004) (retaining right to "inspect the work," "schedule the work [ ] wanted," and "stop performance of the work" if the work was unsafe falls short as a matter of law); *McClure*, 162

S.W.3d at 352 (exercising "general supervisory authority over the scheduling and results of the subcontractors' work," among other things, is not "more than a scintilla of evidence" of retained control). Providing the contractor access to certain tools, such as an online review platform, also does not establish retained control. *Victoria Elec. Co-op., Inc. v. Williams*, 100 S.W.3d 323, 327–28 (Tex. App. 2002) (hirer's power "to increase or change the amount or kind of tools and equipment" the contractor may use, as well as "inspect[], test, and approv[e]" the "manner of performance of the work, and all equipment used," was "broadly supervisory" and "not evidence of control over the 'details of what was being done' so as to impose liability"). And requiring contractors to execute non-disclosure agreements does not constitute retained control. *Cf. Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 382 (5th Cir. 2019) (requiring execution of NDA does not show control over independent contractor).

Each of these conditions demonstrates only that YouTube had "some latitude to tell its independent contractors what to do." *Koch Refin. Co. v. Chapa*, 11 S.W.3d 153, 156 (Tex. 1999). But they do not even establish that YouTube exercised "the more general right of control over operations," much less that it "had specific control over the safety and security of" Plaintiff's working conditions. *Exxon*, 867 S.W.2d at 23.

At bottom, Plaintiff's allegations are fundamentally inconsistent with the "retained control" exception. The Complaint alleges that YouTube should have, *but did not*, exercise control over Plaintiff's safety. But to state a claim Plaintiff must plausibly allege not that YouTube *should have* taken control, but that it *actually did* exercise such extensive control over safety that content moderators, such as Plaintiff, were "not free to do their work in their own way." *Koch Refin.*, 11 S.W.3d at 156. Plaintiff has not done so, and for that reason cannot circumvent the carefully crafted framework to remedy workplace injuries via a claim against her employer. Her second claim should be dismissed.

3. <u>Claim 3: Plaintiff's Third Claim Fails Because Texas Law Does Not Recognize the Provision of Unsafe Equipment as an Independent Claim</u>

Plaintiff's third cause of action alleges that YouTube owes her a duty because it provided her access to an online "review platform" that she characterizes as "unsafe equipment." Compl.

¶¶ 136–137.  This claim fails because Texas law does not recognize "the negligent provision of unsafe equipment" as an independent cause of action, or as an exception to the rule that a hiring entity is not liable for the safety of its independent contractor's employees.  To the contrary, Texas law considers whether the hirer provided equipment to the contractor only as one factor in assessing whether the hirer "retained control" over the contractor's activities.  *See, e.g.*, *Coastal Marine*, 988 S.W.2d at 225–26 (considering allegation that hirer owned crane that caused plaintiff-subcontractor's injuries in assessing whether hirer retained control over independent contractor, not as an independent exception to no-duty rule); *Victoria Elec.*, 100 S.W.3d at 327–28 (considering allegation that hirer could "increase or change the amount or kind of tools and equipment" the contractor may use, and "inspect[], test, and approv[e] . . . all equipment used" in assessing whether hirer "retained control" over contractor's employees); *Gomez v. Saratoga Homes*, 516 S.W.3d 226, 230, 232–37 (Tex. App. 2017) (considering allegation that hirer failed to "provide [the plaintiff] with . . . safe machinery and equipment" not as an independent exception to no-duty rule, but in assessing whether hirer "retained control").  As explained above, YouTube did not retain control over Plaintiff's safety and wellness. Rather, it contracted with a trusted partner with expertise in ensuring safe content moderation.

### B.    Plaintiff Failed to State a Claim Under the UCL

Plaintiff's fourth and fifth causes of action allege that YouTube violated California's UCL.  *See* Cal. Bus. & Prof. Code §§ 17200 *et seq*. Both causes of action fail for multiple reasons, including that the UCL does not apply to Plaintiff's claims, which arise from events that occurred in Texas, that Plaintiff has failed to state a viable claim for equitable relief, which is the only relief available under the UCL, and that Plaintiff's exclusive remedy for workplace injuries is workers' compensation.

#### 1.    California's UCL Does Not Apply to Texas Residents Who Sustained Injuries in Texas

As a resident of Texas bringing claims based on an injury sustained in Texas, Plaintiff cannot state a claim under California's UCL.  The UCL does not apply to the claims of non-resident plaintiffs for conduct occurring outside of California.  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191,

1206–09 (2011).  Plaintiff does not allege that any of the relevant conduct occurred in California.  She performed the content-moderation work in Texas, she received the relevant trainings in Texas, and she interacted with Collabera's on-site wellness counselors in Texas.  The injuries she alleges all were sustained exclusively in Texas.  As a result, the UCL does not apply.

Plaintiff cannot rely on the fact that Google is headquartered in California to overcome this result, as illustrated by *Sullivan*.  In that case, the defendant was a corporation headquartered in Redwood Shores, California.  51 Cal. 4th at 1208.  The California Supreme Court considered whether the UCL applied to allegations that the defendant failed to pay overtime to its employees in Arizona and Colorado.  The court found that the "decision-making process" that led the defendant to incorrectly classify the plaintiffs as "exempt from the requirement to be paid overtime wages" occurred at the defendant's headquarters in California.  *Id.*  Nonetheless, the court held that the UCL did not extend to the plaintiff's claims because they were "nonresidents" of California, who "worked in other states."  *Id.*

The same is true here.  Plaintiff is a resident of Texas, and she performed all of the relevant content-moderation work in Texas.  All of the conduct Plaintiff contends is "unlawful" occurred in Texas.  Plaintiff has not identified any unlawful conduct that occurred in California.  Consequently, the UCL does not apply, and Plaintiff's fourth and fifth causes of action should be dismissed.

2.    Plaintiff's UCL Claims Fail Because They Present No Viable Claim for Equitable Relief

Plaintiff's UCL claims also fail because they do not "present a viable claim for restitution or injunctive relief (the only remedies available)," and therefore fail "to state a viable UCL claim." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 467 (2005).  This defect manifests in three ways, each independently fatal.  *First*, Plaintiff has not pled the inadequacy of remedies available at law, a basic prerequisite of equitable relief.  *Second*, Plaintiff seeks remedies that are not available under the UCL.  And *third*, as a former content moderator, Plaintiff lacks standing to seek injunctive relief.

(a)    *Plaintiff's UCL Claims Fail Because Plaintiff Has Not Alleged the Inadequacy of Legal Remedies, and Cannot Do So*

To state a claim under the UCL, Plaintiff "must establish that she lacks an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (citing *Mort v. United*

*States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law.")).   The inadequacy of legal remedies must be pleaded in a complaint seeking equitable relief. *Sonner*, 971 F.3d at 844 (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (complaint seeking equitable relief failed because it did not plead "the basic requisites of the issuance of equitable relief" including "the inadequacy of remedies at law.")); *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD,  2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) (dismissing claims for injunctive relief under the UCL where plaintiffs failed to allege that they lacked an adequate remedy at law).

Plaintiff fails entirely to plead the inadequacy of legal remedies, and it is apparent from the face of the Complaint that amendment could not cure this defect. The Complaint itself demonstrates that damages are available to compensate Plaintiff for any injury suffered. Plaintiff's first three causes of action each seek legal remedies for the same allegedly unlawful conduct identified in Plaintiff's UCL claims. *See Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK,  2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (dismissing a UCL claim where the plaintiff had an adequate remedy at law provided by five additional causes of action based upon the same factual predicates). Those causes of action seek damages including medical monitoring, treatment, and other compensatory damages. Compl. ¶¶ 127–132, 145–150. Plaintiff does not allege that these damages would not "provide an adequate remedy for the alleged injury." *In re MacBook*, 2020 WL 6047253, at *4.

Because Plaintiff has an adequate remedy at law, she is not entitled to equitable relief, and her UCL claims must be dismissed. *Zapata Fonseca*, 2016 WL 4698942, at *7. Furthermore, because she cannot plead inadequacy, "further amendment of the complaint would be futile," and the Court should dismiss Plaintiff's fourth and fifth causes of action with prejudice. *See In re MacBook*, 2020 WL 6047253, at *4.

      (b)    *Plaintiff's Requested Remedies of Medical Monitoring and Treatment Compensation Constitute Damages That Are Not Recoverable Under the UCL*

Plaintiff's fourth and fifth causes of action each seek a form of damages that may not be recovered under the UCL. It is well established that a plaintiff "may not recover monetary relief

under the limited remedies provided by the UCL." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003). Plaintiff's claims seek "an injunction creating a YouTube-funded medical monitoring program . . . [which] should include a fund to pay for the medical monitoring and treatment." Compl ¶¶ 160, 176. Medical monitoring and treatment costs constitute legal damages, not equitable relief, and therefore are not recoverable under the UCL. *See, e.g., Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 974 (1993) (discussing the costs of medical monitoring as an "item of damages"); *Lockheed Martin Corp. v. Superior Court*, 29 Cal. 4th 1096, 1103–06 (2003) (discussing the availability of "medical monitoring as a form of damages" in a class action); *Miranda v. Shell Oil Co.*, 17 Cal. App. 4th 1651, 1655 (1993) ("Medical monitoring damages consist of the present dollar value of the reasonable costs of future periodic medical examinations and related care[.]"); *Zinser*, 253 F.3d at 1194 (observing that a "requested 'medical monitoring fund' is in essence a request for monetary relief"); *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 551 (2011) ("[A]ny reasonable charges for treatment the injured person has paid or, having incurred, still owes the medical provider are recoverable as economic damages."). Because Plaintiff's UCL claims seek only unavailable remedies, they must be dismissed. *Madrid*, 130 Cal. App. 4th at 452 (affirming trial court's grant of a demurrer to plaintiffs' UCL claims where only unavailable remedies were pleaded).

> (c)   *As a Former Content Moderator, Plaintiff Lacks Standing to Seek Injunctive Relief*

In addition to seeking medical monitoring and treatment costs, Plaintiff's UCL claims also seek "an order requiring YouTube to implement safety guidelines for all Content Moderators" or "an order requiring YouTube to implement safety guidelines for all prospective content moderation operations." Compl. ¶¶ 159, 175. However, Plaintiff lacks standing to seek an injunction because such relief would not redress Plaintiff's alleged injuries. The Complaint alleges that Plaintiff no longer works as a content moderator. *Id.* ¶ 80.

To have standing, a plaintiff must demonstrate that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

As a former content moderator, Plaintiff "lacks standing to pursue injunctive relief under the UCL" where such injunction concerns Defendant's future content-moderation practices. *Guerrero v. Halliburton Energy Servs.*, Inc., 231 F. Supp. 3d 797, 809 (E.D. Cal. 2017) (citing *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 364 (2011) (acknowledging that plaintiffs no longer employed by the defendant "lack standing to seek injunctive or declaratory relief against its employment practices")). Therefore, Plaintiff's claim for injunctive relief regarding the implementation of safety guidelines must be dismissed.

### 3.    Plaintiff's Fourth Claim Also Fails Because Common Law Negligence Cannot Form the Predicate for a UCL Claim

Plaintiff's fourth cause of action alleges a violation of the UCL's "unlawful" prong premised on negligent exercise of retained control and negligent provision of unsafe equipment. Compl. ¶¶ 154–155. Plaintiff acknowledges that both of these negligence allegations constitute "violat[ions of] California common law." *Id.* To state a UCL claim based on an "unlawful" business practice, Plaintiff must allege that a defendant "engaged in a business practice forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." [2] *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (citations omitted). "A common law violation is insufficient to establish a violation of the unlawful prong of the UCL." *Croshal v. Aurora Bank, F.S.B.*, No. C 13-05435 SBA, 2014 WL 2796529, at *8 (N.D. Cal. June 19, 2014); *see also Giovanni v. Bank of Am., Nat'l Ass'n*, No. C 12-02530 LB, 2013 WL 1663335, at *8 (N.D. Cal. Apr. 17, 2013) ("To support a claim for a violation of the UCL, a plaintiff cannot simply rely on general common law principles."). Because Plaintiff's claims are based on common law

---

[2] "A violation of 'court-made' law is, for example, a violation of a prior court order." *Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074 n.22 (C.D. Cal. 2003), on reconsideration in part (June 5, 2003) (citing *Hewlett v. Squaw Valley Ski. Corp.*, 54 Cal. App. 4th 499, 533–35 (1997) (holding that violations of a court's temporary restraining order can be redressed as an "unlawful" act claim under the UCL)); *see also Nat'l Rural Telecomms., Inc.*, 319 F. Supp. 2d at 1074–75 ("court made" precedent relied on by plaintiff actually concerned "a trial's court's incorporation of prohibitions established by" the California Civil Code).

negligence only, Plaintiff has failed to allege that YouTube "engaged in a business practice forbidden by law" as necessary to plead a claim for relief under the UCL. *Shroyer*, 622 F.3d at 1044. Plaintiff's fourth cause of action must therefore be dismissed.

### 4. Plaintiff's Fifth Claim Also Fails Because It Is Preempted By the Workers' Compensation Statute

Plaintiff's fifth cause of action is similarly untenable. Plaintiff alleges a violation of the UCL premised on the California Labor Code under a theory that YouTube was her "special employer." Compl. ¶¶ 162–169. But if YouTube were deemed Plaintiff's "special employer," Plaintiff's exclusive remedy would be worker's compensation, and this Court would lack jurisdiction. Worker's compensation provides the exclusive remedy for injuries arising out of the normal course of employment. *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 813 (2001) (workers' compensation system subsumes all statutory and tort remedies otherwise available for injuries arising out of and in the course of employment). The existence of a special employment relationship does not alter the analysis; where a special employment relationship exists, worker's compensation remains the exclusive remedy. *See Kowalski v. Shell Oil Co.*, 23 Cal. 3d 168, 175 (1979) ("If general and special employment exist, the injured workman can look to both employers for [workers'] compensation benefits. If workmen's compensation is available, it constitutes, with an exception not pertinent here, the workman's sole remedy against the employer.").[3] There is no exception to workers' compensation preemption for UCL claims. *See, e.g. Hughes v. Argonaut Ins. Co.*, 88 Cal. App. 4th 517, 531 (2001) ("An employee cannot hide from the sweep of WCAB jurisdiction merely by alleging that an insurer's conduct violates the UCL or is otherwise tortious. There is no 'equitable claim' exception to the WCAB's exclusive jurisdiction."). Plaintiff's fifth cause of action therefore must be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint.

---

[3] Texas law does not differ from California law on this point. *See, e.g., Rodriguez v. Martin Landscape Mgmt., Inc.*, 882 S.W.2d 602, 604 (Tex. App. 1994) (defining special employment relationship under Texas law); *Marshall v. Toys–R–Us Nytex, Inc.*, 825 S.W.2d 193, 196 (Tex. App. 1992) (worker's compensation exclusivity applies to special employers).

DATED:  December 2, 2020                    MUNGER, TOLLES & OLSON LLP
                                                GREGORY P. STONE
                                                BETHANY W. KRISTOVICH
                                                ZACHARY M. BRIERS
                                                BENJAMIN G. BAROKH
                                                APRIL D. YOUPEE-ROLL


                                            By:  _____/s/ Zachary M. Briers_____
                                                        Zachary M. Briers
                                            Attorneys for YOUTUBE, LLC

DEFENDANT YOUTUBE, LLC'S  MOTION TO DISMISS

1

## CERTIFICATE OF SERVICE

2

     I certify that all participants in this case are registered CM/ECF users upon whom this

3

document, as well as the accompanying proposed order, will be served by the CM/ECF system.

4

5

DATED: December 2, 2020              By:   */s/ Zachary M. Briers*

6

                                         Zachary M. Briers
                            Attorneys for YOUTUBE, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT YOUTUBE, LLC'S MOTION TO DISMISS