Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Kevin Rayhill (State Bar No. 267496)
Katharine L. Malone (State Bar No. 290884)
Keydon A. Levy (State Bar No. 281372)
Kyle P. Quackenbush (State Bar No. 322401)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            swilliams@saverilawfirm.com
            krayhill@saverilawfirm.com
            kmalone@saverilawfirm.com
            klevy@saverilawfirm.com
            kquackenbush@saverilawfirm.com

*Attorneys for Plaintiff and the Proposed Class*
[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JANE DOE**, individually and on behalf of all others similarly situated, | Civil Case No. 4:20-CV-07493-YGR |
| *Plaintiff,* | **OPPOSITION TO DEFENDANT YOUTUBE, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | |
| **YOUTUBE, INC.** | |
| *Defendant.* | |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ...........................................................................................................1

II. LEGAL STANDARD ..................................................................................................... 2

III. BACKGROUND .............................................................................................................3

IV. LAW AND ARGUMENT ...............................................................................................5

 A. California, not Texas, law governs Plaintiff's negligence claims.......................5

  1. California law presumptively applies to Plaintiff's claims. .................................. 6

  2. YouTube cannot defeat the presumption that California law applies to Plaintiff's claims. ................................................................................................................. 6

   a. YouTube fails to identify a material difference between Texas and California law..............................................................................................7

   b. Even if there is a material difference between Texas and California law, there is no true conflict.........................................................................7

   c. YouTube also fails to show that Texas's interests (if any) trump California's in a "comparative impairment" analysis. ...........................10

 B. Although YouTube has forfeited any argument that Plaintiff has inadequately pled her negligence claims under California law, she nevertheless has met the pleading standard. ....................................................................................................... 11

  1. YouTube retained control over Plaintiff's working conditions. ..........................12

  2. YouTube affirmatively contributed to Plaintiff's injuries by requiring use of an unsafe review platform and failing to make improvements that would have mitigated the risk of harm. ..................................................................................12

  3. Plaintiff's cause of action for negligent provision of unsafe equipment is adequately pled because YouTube provided the SRT and required its use.........14

 C. Even if Texas law applies, Plaintiff's negligence claims survive dismissal.....................14

  1. Because Texas recognizes liability for negligent exercise of retained control, Plaintiff's allegations satisfy the pleading standard. ...........................................15

  2. Texas recognizes negligent provision of unsafe equipment as part of a claim for negligent exercise of retained control.................................................................17

 D. Plaintiff states a sufficient UCL claim. ...............................................................19

  1. Although she is located in Texas, Plaintiff can invoke the UCL's protections....19

  2. Plaintiff seeks equitable relief, not damages. .................................................... 20

3.  Plaintiff has standing to ameliorate YouTube's deficient workplace safety practices. ...................................................................21

4.  YouTube's negligence and unfair practices provide a basis for Plaintiff's UCL claim. ..................................................................... 22

5.  Workers' compensation exclusivity does not bar Plaintiff's UCL claim.............23

V.   CONCLUSION .............................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brazil v. Dole Food Co., Inc.*, No. 12-CV-013821-LHK, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013).................................................................................................................10

*Cedano-Viera v. Ashcroft*, 324 F.3d 1062 (9th Cir. 2003)..............................................11

*Collazo v. Wen by Chaz Dean, Inc.*, No. 215CV01974ODWAGR, 2015 WL 4398559 (C.D. Cal. July 17, 2015)....................................................................................... 19, 20

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...............2

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101 (9th Cir. 2020) ...............................................................................................6

*In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013)..........................................................................................................20

*Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010)....................6

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000)........................3

*Liew v. Official Receiver & Liquidator (Hong Kong)*, 685 F.2d 1192 (9th Cir. 1982) ................................10

*In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420-YGR, 2017 WL 1391491 (N.D. Cal. Apr. 12, 2017) .............................................................................8

*In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014)............................................................................................2

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ....................................10

*Mercado v. Allstate Ins. Co.*, 340 F.3d 824 (9th Cir. 2003).........................................23

*Montgomery v. United States*, 772 F. Supp. 2d 1256 (S.D. Cal. 2011) ........................11

*Nelson v. U.S. Postal Serv.*, 189 F. Supp. 2d 450 (W.D. Va. 2002) .............................24

*Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ........................................................................................................................10

*In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280 (N.D. Cal. 2018) ......................*passim*

*Rosenberg v. Renal Advantage, Inc.*, 11-CV-2152, 2013 WL 3205426 (S.D. Cal. June 24, 2013) ........................................................................................................................21

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010) ............................ 23

*Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008) ............................ 3

*In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2010) ............................ 2

*Tidenberg v. Bidz.com, Inc.,* No. 08–cv–5553, 2009 WL 605249 (C.D. Cal. Mar. 4, 2009) .................... 19

*Wasson v. Brown*, 316 F. App'x 663 (9th Cir. 2009) ............................ 22

*In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015) ............................ 6

*Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ............................ 10

**State Cases**

*Ayers v. Jackson Twp.*, 106 N.J. 557 (1987) ............................ 21

*Bell v. VPSI, Inc.,* 205 S.W.3d 706 (Tex. App. 2006) ............................ 18, 19

*Borchardt-Spicer v. G.A.F. Corp.*, 139 Mich. App. 658 (1984) ............................ 24

*Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987) ............................ 7

*Cmty. Assisting Recovery, Inc. v. Aegis Sec. Ins. Co.*, 92 Cal. App. 4th 886 (2001) ............................ 23

*Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223 (Tex. 1999) ............................ 16

*Collins v. Union Pac. R.R. Co.*, 207 Cal. App 4th 867 (2012) ............................ 24

*Conway v. Circus Circus Casinos, Inc.*, 116 Nev. 870 (2000) ............................ 24

*Hoechst-Celanese Co. v. Mendez*, 967 S.W.2d 354 (Tex. 1998) ............................ 16, 18

*Hooker v. Dep't of Trans*p., 27 Cal. 4th 198 (2002) ............................ 7, 11, 12

*Hurtado v. Superior Court*, 11 Cal. 3d 574 (1974) ............................ 7, 8

*Koch Ref. Co. v. Chapa*, 11 S.W.3d 153 (Tex. 1999) ............................ 16, 17

*Lee Lucas Constr., Inc. v. Harrison*, 70 S.W.3d 778 (Tex. 2001) ............................ 7, 15

*McCann v. Foster Wheeler LLC,* 48 Cal. 4th 68 (2010) ............................ 8, 9

*McClure v. Denham*, 162 S.W.3d 346 (Tex. App. 2005) ............................ 16

*McKown v. Wal-Mart Stores, Inc.*, 27 Cal. 4th 219 (2002) ............................ 14

*Millard v. Biosources, Inc.*, 156 Cal. App. 4th 1338 (2007) ............................ 12, 13

*Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214 (1999) ............................ 19

*Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659 (2006) ............................ 23

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (1993) ......................................................... 21

*Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex. 1985) ................................................................ 16

*Santiago v. Emp. Benefits Servs.*, 168 Cal. App 3d 898 (1985) ......................................................... 24

*Saunders v. Superior Court*, 27 Cal. App. 4th 832 (1994) ............................................................ 23

*Shell Oil Co. v. Khan,* 138 S.W.3d 288 (Tex. 2004) ................................................................ 18

*Shimp v. New Jersey Bell Tel. Co.*, 145 N.J. Super. 516 (Ch. Div. 1976) ........................................... 24

*Sullivan v. Oracle Corp.* 51 Cal. 4th 1191 (2011) .................................................................. 20

*Tverberg v. Fillner Constr., Inc.*, 202 Cal. App. 4th 1439 (2012) ..............................................12, 13

*Victoria Elec. Coop., Inc. v. Williams*, 100 S.W.3d 323 (Tex. App. 2002) ......................................16, 19

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ...................................................................................... 23

Cal. Bus. & Prof. Code § 17203 .................................................................................. 20, 21

Cal. Bus. & Prof. Code § 17204 ...................................................................................... 21

Cal. Lab. Code § 3602(a) ............................................................................................. 24

Tex. Civ. Prac. & Rem. Code § 95.003 ............................................................................... 16

# I.   INTRODUCTION

Prompt removal of extremist content, sexual violence, and hate speech from widely used internet platforms is vital to making them safe for their users. Because removing such content requires human review, content moderators perform an essential and fundamental role in YouTube's business model. While YouTube acknowledges the challenges and necessity of content moderation, it continues to breach its legal, moral, and ethical obligations to workers like Jane Doe. In spite of YouTube's flurries of argument and protestations of innocence, its motion to dismiss must be denied because Plaintiff has adequately pled her case.

A brief review of the pertinent facts and law underscores the motion's lack of merit. YouTube's content moderators are regularly exposed for hours at a time to some of the most graphic and disturbing material on the internet. Via its Single Review Tool (the "SRT"), YouTube entirely controls the manner in which its content moderators do their work. YouTube also controls the Community Guidelines that content moderators must apply and the unsafe pace at which they must work. YouTube knows that repeated exposure to graphic and disturbing content can lead to harm. And YouTube is aware that minor changes to the SRT as well as appropriate psychological supports would help mitigate that harm. Yet YouTube repeatedly chooses not to implement these safeguards.

YouTube engaged in the conduct at issue from its California headquarters. Therefore, California's interest in controlling the conduct of its resident businesses requires application of California—not Texas—law. Nevertheless, under the law of either state, hiring a contractor to perform work does not eliminate a principal's liability to the contractor's employees when the principal retains control over the work and negligently contributes to injuries suffered by those employees. This liability also arises when the principal requires that the work be conducted using unsafe tools. YouTube can thus be liable to Plaintiff and the members of the proposed class by virtue of the strict control YouTube exercises over the conditions under which its content moderators labor.

Out-of-state plaintiffs, such as Jane Doe, can also avail themselves of the protections of California's Unfair Competition Law (the "UCL"). The statute is clear that it can be invoked by "any person" who has been injured by conduct occurring in California. The equitable relief available under

1  the UCL includes an injunction requiring YouTube to improve its content moderation policies and

2  procedures and medical monitoring to ensure that psychological injuries suffered by content moderators

3  are not further exacerbated. UCL claims can rest on grounds of common-law negligence as well as

4  unfair practices that harm workers; there is no requirement that YouTube's conduct have violated a

5  specific statute. Finally, because Plaintiff seeks equitable relief through her UCL claims, her claims are

6  not barred by workers' compensation exclusivity.

7      While human content moderation is necessarily challenging, it is perfectly possible to minimize

8  the risk faced by content moderators who work to make the internet a safer and more welcoming place.

9  Indeed, YouTube helped draft guidelines identifying best practices for safe content moderation. Yet

10  YouTube ignores its own advice, instead choosing to prioritize profit over the health and safety of the

11  content moderators whose work allows its platform to flourish. This situation cannot be allowed to

12  persist unchecked.

13      Plaintiff seeks to hold YouTube accountable for the harm that it has caused and to ensure that

14  such harm does not continue. Her complaint is sufficient to establish her right to the relief that she

15  seeks. YouTube's motion must be denied.

16  **II.      LEGAL STANDARD**

17      To withstand a motion to dismiss, all that a plaintiff must do is allege "'enough facts to state a

18  claim to relief that is plausible on its face.'" *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420

19  YGR, 2014 WL 309192, at *9 (N.D. Cal. Jan. 21, 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

20  544, 570 (2007)). "Specific facts are not necessary; the statement need only give the defendant[s] fair

21  notice of what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig.*,

22  643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (internal quotation marks omitted) (quoting *Erickson v.*

23  *Pardus*, 551 U.S. 89, 93 (2007)). A court must deny a Rule 12(b)(6) motion even if the complaint

24  establishes only a "nonnegligible probability that the claim is valid; . . . the probability need not be as

25  great as such terms as 'preponderance of the evidence' connote." *In re Text Messaging Antitrust Litig.*,

26  630 F.3d 622, 629 (7th Cir. 2010). When determining the sufficiency of the allegations in a complaint, a

27  court must accept all non-conclusory allegations in a complaint as true and construe them in the light

most favorable to the plaintiff. *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008). Defendants may not ignore or recast plaintiffs' allegations. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 989-90 (9th Cir. 2000).

## III.    BACKGROUND

YouTube is headquartered in San Mateo, California. ECF No. 1-1 ¶ 13. From its headquarters, YouTube designed and implemented the policies, procedures, and technology that form the basis of Plaintiff's claims. *Id.* ¶¶ 5, 13–14, 22, 65–69. Plaintiff moderated content for YouTube while directly employed by Collabera, one of YouTube's vendors. *Id.* ¶¶ 80–88. Her task, like that of all content moderators, was to review content that potentially violated YouTube's Community Guidelines to determine if the content should be removed. *Id.* ¶¶ 21–22. Plaintiff, like other content moderators, was exposed to hours upon hours of horrifying imagery, including graphic violence, sexual assault, and child pornography. *Id.* ¶¶ 59, 88. As evidenced by its participation in a consortium to develop industry standards for content moderators reviewing material involving child sexual abuse, YouTube knew that its moderators risked trauma through their work. *Id.* ¶¶ 39–47.

Despite its knowledge of the risks its content moderators faced, YouTube did nothing to protect them. *Id.* ¶ 51. For instance, when confronted with direct evidence of PTSD among its content moderators at Collabera's Austin, Texas facility, YouTube's response was not to audit Collabera's procedures to ensure they complied with best practices or with YouTube's stated goals, but rather to require content moderators to sign a document acknowledging that performing the job can cause PTSD. *Id.* ¶¶ 77–78. By forcing content moderators to sign this document, YouTube essentially coerced them into implicitly consenting to termination if they experienced negative psychological impacts from performing their work as instructed and required by YouTube. *Id.* ¶ 78.

YouTube has failed to implement workplace safety measures that would mitigate the risk to content moderators' health and safety. YouTube's training protocol fails to equip content moderators with the skills to assess their own responses to graphic content. *Id.* ¶ 54. Rather than providing resiliency training, YouTube instead gives moderators a two-week course consisting of an instructor's presentation of YouTube-created PowerPoints that abruptly thrust graphic content upon the trainees.

*Id.* ¶ 55.

Content moderation becomes no safer once work begins. YouTube becomes aware of videos that may need moderation after they are flagged by individual users of the platform. *Id.* ¶¶ 20–21. To determine whether a video should be removed, content moderators must apply YouTube's Community Guidelines, which contain hundreds of rules that are created and continually revised by YouTube. *Id.* ¶ 59. Notwithstanding the complexity of this task and the traumatic nature of the content being reviewed, YouTube imposes strict quantity and accuracy quotas. *Id.* ¶ 60. To comply with these quotas, content moderators must review between 100 and 300 pieces of content per day with an error rate of two to five percent. *Id.* ¶ 60. To determine whether content moderators meet these metrics, YouTube (not its vendors) audits content moderators' work. *Id.* ¶ 61. Moreover, because YouTube is chronically short of content moderators due to the stressful and traumatic conditions YouTube imposes upon them, content moderators are required to review far more graphic content than the four hours per day to which YouTube claimed it would limit their exposure. *Id.* ¶ 64.

All of this review must be performed on YouTube's proprietary SRT. *Id.* ¶¶ 5, 65. YouTube controls how the videos are displayed (e.g., full screen versus thumbnails, blurred versus unblurred, etc.), how the accompanying audio is broadcast, and whether a content moderator can control the start of the next video following a particularly disturbing one. *Id.* ¶ 66. YouTube has failed to implement technological safeguards in the SRT that would mitigate some of the harm caused by reviewing graphic and disturbing content, including changing the color or resolution of the video, superimposing a grid over the video, changing the direction of the video, blurring portions of the video, reducing the size of the video, and muting audio. *Id.* ¶ 67. Indeed, in some instances, YouTube has actively refused to implement safeguards. For instance, following a request for a technological change that would add a warning label to content flagged by users as containing ultra-graphic violence, a YouTube engineer determined that this would take roughly half a day to implement. *Id.* ¶ 68. Nevertheless, YouTube refused to implement this simple change that would have allowed content moderators to mentally prepare themselves before viewing particularly disturbing images. *Id.* ¶¶ 68–69.

YouTube has also failed to provide meaningful psychological support to content moderators. *Id.* ¶ 70. YouTube purportedly offers various "wellness" benefits, but these support services were and are insufficient. *Id.* ¶ 70–71. YouTube's "Wellness Coaches" are underqualified and undertrained and provide dubious and even dangerous advice. *Id.* ¶ 72–73. Not only that, although YouTube's content moderators work around the clock, coaches are unavailable during evening shifts, depriving those moderators of any in-person support. *Id.* ¶ 71. Compounding its failure to provide safe working conditions for its content moderators, YouTube prevents them from seeking appropriate mental health care by requiring that they be instructed that they cannot talk about the content they view to anyone outside of their review team, including mental health professionals. *Id.* ¶ 75.

## IV.    LAW AND ARGUMENT

Plaintiff brings five claims: a strict liability claim,[1] two common-law negligence claims, and two claims under the UCL. To defeat her negligence claims, YouTube relies solely on its contention that Texas law applies to those claims and that she has failed to state a claim under that state's law. YouTube is incorrect on both counts. Under the correct conflict-of-law analysis, California law clearly applies. And although YouTube has forfeited any argument that Plaintiff's negligence claims are insufficient to survive dismissal under California law by failing to make such an argument in its motion, Plaintiff has, in fact, stated a claim under California law. Even if Texas law does apply, Plaintiff has still stated a valid cause of action in negligence. Finally, Plaintiff's UCL claims are legally sufficient because YouTube's misconduct occurred at and was directed from its California headquarters.

### A.    California, not Texas, law governs Plaintiff's negligence claims.

YouTube has erroneously applied California's choice-of-law analysis and failed to carry its burden to show that Texas law should apply to Plaintiff's negligence claims. California law presumptively applies because Texas has no interest in preventing its residents from holding a California corporation accountable for its negligent conduct. Even if Texas did have an interest, California's interest in regulating the conduct of businesses headquartered in California outweighs

---

[1] Plaintiff does not object to dismissal of her strict liability claim.

Texas's interest in barring its residents from bringing tort actions. As a result, her negligence claims must be evaluated under California law.

> **1.      California law presumptively applies to Plaintiff's claims.**

"Under California's choice of law rules, the class action proponent bears the initial burden to show that California has significant contact or significant aggregation of contacts to the claims of each class member." *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 312 (N.D. Cal. 2018) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)). Once a class action plaintiff demonstrates that California has this contact, "the burden shifts to the other side to demonstrate that foreign law, rather than California law, should apply to class claims." *Id.* (quoting *Mazza*, 666 F.3d at 590)). This burden is "substantial," *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 340 (N.D. Cal. 2010) (citing *Martin v. Dahlberg*, 156 F.R.D. 207, 218 (N.D. Cal. 1994)); *see also Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1111 (9th Cir. 2020) ("California law presumptively applies under the governmental interest approach . . . .").

Application of California law is appropriate where, as here, the defendant's principal place of business is in California and executive decisions were made there. *See In re Qualcomm*, 328 F.R.D. at 312–313; *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602 (N.D. Cal. 2015) (holding that California law applied because the defendant corporate headquarters were in California, the relevant decisionmakers were largely in California, and the processes at issue were developed in and directed from California). Plaintiff alleges, and YouTube does not deny, that YouTube's principal place of business is in San Mateo, and that from its offices there it designed and implemented the policies, procedures, and technologies challenged in this action. ECF No. 1-1 ¶¶ 5, 13, 14, 22, 65–69. These allegations are more than sufficient to give rise to the presumption. Thus, the burden has shifted to YouTube to show that Texas law applies.

> **2.      YouTube cannot defeat the presumption that California law applies to Plaintiff's claims.**

To defeat the presumptive application of California law, YouTube must demonstrate for each negligence claim that (1) Texas law is materially different than California law; (2) where material

differences exist, Texas has an interest in having its law applied; and (3) if Texas does have an interest, that interest would be more impaired than California's if Texas's law were to be subordinated to California's. *See In re Qualcomm*, 328 F.R.D. at 313 (citing *Mazza*, 666 F.3d at 590–93). YouTube does not meet this test.

### a. YouTube fails to identify a material difference between Texas and California law.

With respect to Plaintiff's cause of action for negligent exercise of retained control, YouTube fails to identify a material difference between the laws of Texas and California. Although the two states use slightly different language to describe the degree of control a principal must exercise in order to be liable, YouTube fails to explain how this difference is material. *Compare Hooker v. Dep't of Trans*p., 27 Cal. 4th 198, 213 (2002) (requiring that a defendant exercise retained control "in a manner that affirmatively contribute[s] to the injury") *with Lee Lucas Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001) (finding liability where a principal "actual[ly] exercise[s]" control). Instead, YouTube focuses on its contention that Texas does not recognize a discrete cause of action for negligent provision of unsafe equipment. Mtn. to Dismiss, ECF No. 16 at 4–5. However, as discussed in detail in Section IV.C.1, this distinction is irrelevant at this stage. Texas law does not hold that a principal can negligently provide unsafe equipment without liability. Instead, Texas law provides that such an act gives rise to liability when the principal requires use of that equipment. *See Lee Lucas Constr.*, 70 S.W.3d at 783 (citing *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999)). Because Plaintiff has alleged that YouTube required content moderators to use the SRT, the analysis under either state's law will not be materially different under the facts of this case.

### b. Even if there is a material difference between Texas and California law, there is no true conflict.

Under the second step of California's choice-of-law analysis, a defendant must prove that a "true" conflict exists, i.e., that both states have a "legitimate interest" in applying their own law. *See Hurtado v. Superior Court*, 11 Cal. 3d 574, 580 (1974). YouTube fails to establish any such conflict.

California has a legitimate interest in regulating its resident corporations and in deterring and punishing tortious conduct emanating from California. *See e.g.*, *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.

App. 3d 605, 614 (1987) ("California's interest in deterring fraudulent conduct by businesses headquartered within its borders . . . would override any possible interest of any other state in application of its own laws to its residents' claims."). In contrast, Texas does not have a legitimate interest in preventing its residents from suing California resident businesses. While it may be true that in enacting liability limits a state has an "interest in protecting resident defendants from excessive financial burdens," *Hurtado*, 11 Cal. 3d at 584, here, Plaintiff is suing YouTube only. Because Texas "has no defendant resident[] to protect," the state "has no interest in denying full recovery to its residents injured by [the out-of-state] defendant[]." *In re Qualcomm*, 328 F.R.D. at 314 (quoting *Hurtado*, 11 Cal. 3d at 584). In fact, "applying [Texas] law[] to bar recovery here would paradoxically disadvantage [Texas's] own citizens for injuries caused by a California defendant's unlawful activities that took place primarily in California." *Id*. at 314. The law is clear: "it is too much of a stretch" to employ a foreign state's law as an "end run" around a forum's interest in regulating its resident businesses. *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420-YGR, 2017 WL 1391491, at *14 (N.D. Cal. Apr. 12, 2017) (quoting *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143-RS, 2016 WL 467444, at *13 (N.D. Cal. Feb. 8, 2016)). Quite simply, California has a legitimate interest in applying its own law. Texas does not.

YouTube argues that Texas has an interest because it seeks to "regulat[e] conduct within its borders." ECF No. 16 at 5. The case it points to, however, is largely inapposite. In *McCann v. Foster Wheeler LLC*, a twenty-five-year California resident developed mesothelioma nearly fifty years after exposure to asbestos in Oklahoma. 48 Cal. 4th 68, 74 (2010). He sued the New York corporation responsible for designing, manufacturing, and providing advice on the installation of the asbestos-containing boiler where he was exposed. *Id*. Oklahoma's statute of limitations barred his claim; the statute of repose in California, where he moved two decades after his exposure, did not. *Id*. The court ultimately held that Oklahoma had an interest in applying its statute of limitations, which "provid[ed] that any tort action for injury arising from 'the design, planning, supervision, or observation of construction or construction of an improvement to real property' must be brought within 10 years." *Id*. at 78, 93–95.

The question for the *McCann* court was how to weigh the law of the plaintiff's forum state (California) against that of the contractor's forum state (Oklahoma). The court did not touch on the requirement that would be analogous here: whether the law of a plaintiff's forum state should prevail over the law of the defendant's home state (New York, in *McCann*). The crux of the court's reasoning was that if California's law were applied, "the subordination of Oklahoma's interest in the application of its law would rest solely upon the circumstance that after defendant engaged in the allegedly tortious conduct in Oklahoma, [the] plaintiff happened to move to a jurisdiction whose law provides more favorable treatment to [the] plaintiff than that available under Oklahoma law." *Id.* at 97. *McCann* would be a pertinent authority if, several years after working as a YouTube moderator, Plaintiff moved to, say, Minnesota and then sued YouTube in Minnesota under Minnesota laws. California, of course, has a much greater interest in controlling YouTube's conduct than an unrelated state such as Minnesota would have.

To the extent *McCann* is instructive, it requires that Texas have a clear and legitimate interest in promoting the commercial activity in which YouTube was engaged. Unlike in *McCann*, there is no statute through which the Texas legislature has articulated the state's policy. Moreover, in *McCann*, the statute concerned the use of real property located within Oklahoma, a clearly legitimate focus of a state's interest. YouTube does not show that the Texas legislature has "balance[d] the interest of injured persons in having a remedy . . . against the interest" of a business in knowing the scope of its potential liability. *Id.* at 91. Instead, YouTube argues that the mere fact that Texas courts have not yet adopted a discrete cause of action for negligent provision of unsafe equipment reflects a legitimate state interest in denying plaintiff's entire negligence case. Absence of evidence is not evidence of absence, and the fact that the courts or legislature of Texas have not spoken does not imply that Texas has expressed a legitimate interest in limiting a resident's ability to seek relief under California law for the misconduct of a California corporation. Because no true conflict exists, this Court can determine that California law applies without proceeding to the third step of the analysis. *See In re Qualcomm*, 328 F.R.D. at 315.

**c.**   **YouTube also fails to show that Texas's interests (if any) trump California's in a "comparative impairment" analysis.**

Even assuming that there is a true conflict between Texas and California law, this Court must determine "which jurisdiction's interest would be more impaired if its policy were subordinated to the policy of the other" (i.e., a "comparative impairment" analysis). *Liew v. Official Receiver & Liquidator (Hong Kong)*, 685 F.2d 1192, 1196 (9th Cir. 1982). Here, California's interest would be more impaired because "[a]pplying the laws of [Texas] will not vindicate California's legitimate interests in deterring harmful conduct within its borders, whereas applying California law to nonresident plaintiffs will vindicate foreign states' interests in compensating their residents." *Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 WL 8742757, at *21 (N.D. Cal. Dec. 21, 2010).

YouTube's reliance on *Mazza,* 666 F.3d 581, for the proposition that "[t]he place of the wrong has the predominant interest," ECF No. 16 at 5, is wrong for three independent reasons. First, *Mazza* was decided at the class certification stage and "depended heavily on a detailed choice-of-law analysis that compared how various states' consumer protection laws applied to the facts of the plaintiffs' claims." *Brazil v. Dole Food Co., Inc.*, No. 12-CV-013821-LHK, 2013 WL 5312418, at *11 (N.D. Cal. Sept. 23, 2013) (emphasis added). YouTube did not—and indeed could not (without conducting discovery)—apply the requisite detailed choice-of-law analysis to the facts of Plaintiff's claims. It is for this reason that district courts "consistently decline[] to apply *Mazza* at the motion to dismiss stage." *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559, 2016 WL 4698942, at *3 (N.D. Cal. Sept. 8, 2016) (collecting cases). This Court should do likewise.

Second, *Mazza* concerned consumer protection statutes, which were considered, debated, and enacted by legislatures and so reflected various states' policy choices. *Mazza*, 666 F.3d at 592; *see also In re Qualcomm*, 328 F.R.D. at 314 (distinguishing *Mazza* on similar grounds). A common law limit on negligence liability, by contrast, does not reflect a legislative determination that a state has an interest in shielding non-resident businesses from liability.

Third, even if "the place of the wrong" test is applicable, the wrong occurred in California. Plaintiff alleges that from its California offices, YouTube negligently designed and maintained the SRT,

which it required all content moderators to use. Complaint ¶¶ 5, 13, 14, 22, 65--9. From these same offices, YouTube negligently created training materials and drafted policies that it required its vendors to use and implement. *Id.* ¶¶ 52, 55–61.  That Plaintiff viewed objectionable material on YouTube's platform and received inadequate YouTube-designed training in Texas is irrelevant because it was YouTube's conduct in California that caused these things to happen. Quite simply, when all content moderators need to do their job is a computer and an internet connection, their physical location is far less important than that of YouTube's misconduct.

Therefore, when the proper choice-of-law analysis is applied, California law clearly controls Plaintiff's claims and must be applied by this Court.

**B.     Although YouTube has forfeited any argument that Plaintiff has inadequately pled her negligence claims under California law, she nevertheless has met the pleading standard.**

In its motion to dismiss, YouTube did not argue that Plaintiff has not adequately stated negligence claims under California law. As a result, any such argument is forfeited. *See Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) (citing *Thompson v. Comm'r*, 631 F.2d 642, 649 (9th Cir. 1980)) ("declin[ing] to consider new issues raised for the first time in a reply brief."). Nevertheless, Plaintiff's pleading is sufficient because YouTube's provision of the SRT, requirement of its use, control over the Community Guidelines, and control over the pace of the work all demonstrate sufficient retained control over content moderators' work to render YouTube liable in tort.

The general rule that a contractor's employee may not sue the principal in tort gives way when the principal negligently exercises retained control. *Montgomery v. United States*, 772 F. Supp. 2d 1256, 1262–63 (S.D. Cal. 2011) (citing *Hooker*, 27 Cal. 4th at 211-12). There are two elements of such a claim: the principal must retain control and that control must affirmatively contribute to the plaintiff's injuries. *Hooker*, 27 Cal. 4th at 213 ("[I]f a hirer does retain control over safety conditions at a worksite and negligently exercises that control in a manner that affirmatively contributes to an employee's injuries, it is only fair to impose liability on the hirer."). Plaintiff's allegations satisfy both prongs of this test.

### 1. YouTube retained control over Plaintiff's working conditions.

Although Collabera operated the Austin facility where Plaintiff sat while performing YouTube's work, YouTube retained control over the conditions there. Plaintiff has alleged that YouTube "retained control" by creating, maintaining, and monitoring content moderators' use of the SRT, the access point and mechanism that allowed content moderators to review content at the jobsite. ECF No. 1-1 ¶ 65. Moreover, she has alleged that YouTube created performance metrics that functionally required content moderation to be performed at an unsafe rate. *Id.* ¶¶ 60, 62. These allegations are sufficient under California law to establish that YouTube retained control over Plaintiff's work.

### 2. YouTube affirmatively contributed to Plaintiff's injuries by requiring use of an unsafe review platform and failing to make improvements that would have mitigated the risk of harm.

YouTube also affirmatively contributed to Plaintiff's injuries. A principal affirmatively contributes to injuries sustained by a contractor's employee when the principal "is actively involved in, or asserts control over, the manner of performance of the contracted work." *Millard v. Biosources, Inc.*, 156 Cal. App. 4th 1338, 1348 (2007) (quoting *Hooker*, 27 Cal. 4th at 215). This "occurs, for example, when the principal employer directs that the contracted work be done by use of a certain mode or otherwise interferes with the means and methods by which the work is to be accomplished." *Hooker*, 27 Cal. 4th at 215. "While the passive permitting of an unsafe condition to occur is not an affirmative contribution, the act of directing that to occur is active participation." *Tverberg v. Fillner Constr., Inc.*, 202 Cal. App. 4th 1439, 1448 (2012). A hirer may also affirmatively contribute by omission. *Hooker*, 27 Cal. 4th at 211-12 n.3. For example, "[i]f the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury." *Id.*

Here, Plaintiff alleges that YouTube had control over the manner in which content moderation was conducted and chose not to take necessary safety precautions. YouTube required that content moderators apply Community Guidelines authored by YouTube using YouTube's SRT at a particular rate. ECF No. 1-1 ¶¶ 59–61. YouTube was not some remote entity that laid out tasks and let Collabera get on with it. Collabera may have controlled the physical worksite, but YouTube controlled every

aspect of how Plaintiff interacted with the content she was moderating. Collabera had no ability to allow Plaintiff to work a safer rate or to alter either the Community Guidelines or the unsafe nature of the SRT. As such, it was YouTube, not Collabera, that affirmatively contributed to Plaintiff's injuries by directing the manner in which she performed her work. *See Millard,* 156 Cal. App. 4th at 1348.

"YouTube also failed to provide safeguards known to mitigate the negative effects of reviewing graphic content." ECF No. 1-1 ¶ 58. By designing the SRT in a manner that did not allow for content moderators to use it safely (for instance, by blurring images or by providing advance notice of especially distributing content), YouTube breached its duty to prevent injury to those required to use it. *Id.* ¶ 67. Not only that, but when presented with an opportunity to make simple changes to render use of the SRT less harmful, YouTube declined to do so. *Id.* ¶ 68–69. And by requiring that the moderation be performed at an unsafe rate, YouTube prevented content moderators from independently mitigating the trauma they were experiencing (for instance, by taking more frequent or longer breaks). *Id.* ¶¶ 60, 62.

YouTube's conduct parallels that in *Tverberg,* 202 Cal. App. 4th at 1449. Tverberg, an independent contractor hired by a subcontractor, twice asked the general contractor to cover eight large holes on the worksite with available metal plates. *Id.* at 1442–43. The general contractor did not cover the holes, and Tverberg was injured when he fell into one of them. The court, denying summary judgment, concluded that a jury could find that the general contractor contributed to Tverberg's injury by determining that stakes and a safety ribbon were sufficient to protect against the holes and by failing to cover the holes after Tverberg had requested that the general contractor do so. *Id.* at 1448.

Here, Plaintiff has alleged that YouTube negligently determined that the features of the SRT were adequate and that the conditions under which YouTube required its content moderators to work were safe. Similarly, she has alleged that when presented with the opportunity to render content moderators' working conditions safer, YouTube refused. Thus, she has sufficiently alleged that YouTube both retained control and exercised it in a negligent manner. Hence, YouTube's motion must be denied.

### 3. Plaintiff's cause of action for negligent provision of unsafe equipment is adequately pled because YouTube provided the SRT and required its use.

In California, "a hirer is liable to an employee of an independent contractor insofar as the hirer's provision of unsafe equipment affirmatively contributes to the employee's injury." *McKown v. Wal-Mart Stores, Inc.*, 27 Cal. 4th 219, 222 (2002). The rationale is that where the hiring party actively contributes to the injury by supplying unsafe or defective equipment, it is the hiring party's own negligence—not that of the contractor—that gives rise to negligence liability. *Id.* at 225.

*McKown v. Wal-Mart Stores, Inc.* illustrates the scope of this liability. In that case Wal-Mart hired a contractor to install speakers in the store ceilings and requested that the contractor use Wal-Mart's forklifts to complete the work. *Id.* at 222. The forklift was missing a necessary piece of equipment, causing McKown to fall twelve to fifteen feet and suffer injury. *Id.* Although Wal-Mart did not insist that McKown use its forklift, the court upheld the jury's determination that Wal-Mart was negligent. *Id.*

Here, YouTube not only provided the SRT, but mandated its use. ECF No. 1-1 ¶ 65. Moreover, while the forklift was incidental to McKown's actual task (installing speakers), the SRT was central to the task of content moderation as it was the only tool through which moderation could be done. And content moderators have identified and requested features that would have rendered the SRT less unsafe to use. *Id.* ¶ 67. These allegations suffice to state a claim against YouTube for the negligent provision of unsafe equipment.

In conclusion, even though YouTube has forfeited any argument that Plaintiff has failed to state a claim under California law, her allegations are still sufficient. As such, this Court must deny YouTube's motion as to her negligence claims.

### C. Even if Texas law applies, Plaintiff's negligence claims survive dismissal.

Although California law applies to Plaintiff's negligence claims, she has also pled enough facts to defeat YouTube's premature attempt to dismiss this case under Texas law.

**1.** **Because Texas recognizes liability for negligent exercise of retained control, Plaintiff's allegations satisfy the pleading standard.**

Even if Texas law applies (and it does not), this Court must still deny YouTube's motion. By mandating that Collabera require content moderators to use a review platform YouTube designed, imposing productivity requirements that prevented content moderators from accessing whatever meager mental health supports Collabera did provide, and failing to require that content moderators be provided with mental health supports that YouTube knew content moderators would need, YouTube negligently exercised retained control over Plaintiff and the other members of the proposed class.

Under Texas law, "if the [principal] retains some control over the manner in which the . . . contractor performs its work," the former's "duty of care [to the contractor's employees] is commensurate with the control it retains over the . . . contractor's work." *Lee Lucas*, 70 S.W.3d at 783 (citing *Elliot-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999); *Hoechst-Celanese Co. v. Mendez*, 967 S.W.2d 354, 355 (Tex. 1998) (per curiam)). Control is retained when the terms of the contract between a principal and a contractor give the former the right to control the performance of the work or when the principal actually exercises control over the manner in which contractor performs the work. *Id.* (citing *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999); *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999)). The former is a question of law, while the latter is a question of fact for the jury. *Id.*

YouTube's motion is premature, as demonstrated by the fact that none of YouTube's cases were decided on a motion to dismiss. Without the precise language of the contract between YouTube and Collabera, this Court cannot evaluate whether YouTube retained contractual control; obtaining access to that language requires discovery. Similarly, the factual question of whether YouTube actually exercised control over the manner in which the putative class members moderated content posted on YouTube cannot be decided now. What matters is whether Plaintiff has alleged that YouTube exercised control. She has.

A principal retains control over a contractor if the contractor "is not entirely free to do the work his own way." *Koch Ref. Co*, 11 S.W.3d at 155 (quoting Restatement (Second) of Torts § 414 cmt. c.).[2] YouTube contends that it had no control over the mental health support that Collabera offered. *See* ECF No. 16 at 7–8. Perhaps Collabera could have instituted policies that would have mitigated the injuries caused by YouTube's review platform, but that possibility does not excuse YouTube from failing to design a safe platform in the first place or to mandate that its vendors take measures to ensure that using YouTube's platform does not unreasonably risk content moderators' mental health. And, of course, whether YouTube would have allowed Collabera to take preventive measures unilaterally cannot be answered now.

This case is not one in which the general contractor hands over plans, gives the subcontractor a deadline, and then lets the subcontractor determine how to do the work. Where a principal "control[s] the manner" in which a contractor performs a task, the principal is liable for unreasonable exercise of that control. *McClure v. Denham*, 162 S.W.3d 346, 352 (Tex. App. 2005) (citing *Koch Ref. Co.*, 11 S.W.3d at 156) (affirming summary judgment where appellant "present[ed] no evidence that the [general contractor] controlled the manner in which [the subcontractor] hoisted and landed the decking material on the building"). Here, YouTube provided Collabera with express instructions on YouTube's Community Guidelines and, most significantly, mandated that moderation be done using a YouTube-provided platform at a rate that effectively prevented content moderators from accessing mental health supports. ECF No. 1-1 ¶¶ 57, 60–62, 65–69. YouTube developed, provided, and actually required use of the SRT; this fact distinguishes this case from those YouTube cites. *See Coastal Marine*, 988 S.W.2d at 225–26 (finding an absent premises owner not liable when an occupant of the premises used a crane owned by the premises owner); *Victoria Elec. Coop., Inc. v. Williams*, 100 S.W.3d 323, 328–29 (Tex. App. 2002) (finding no liability where a general contractor had only a contractual right to require an "increase or change the amount or kind of tools and equipment" in order to "ensur[e] [the

---

[2] Texas adopted § 414 of the Restatement (Second) of Torts in *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex. 1985), *superseded by statute in part as applied to property owners by* Tex. Civ. Prac. & Rem. Code § 95.003; *see also Hoechst-Celanese*, 967 S.W.2d at 356 (confirming authority of the Restatement following the statutory amendment).

subcontractor's] overall compliance with the contract" but without considering whether there was actual control). YouTube cannot seriously contend that Collabera could have elected not to use the SRT platform. *See, e.g.*, *Koch Ref. Co.*, 11 S.W.3d at 155 (indicating that liability does not attach when the general contractor retains only the right to "make suggestions or recommendations which need not necessarily be followed" (quoting Restatement (Second) of Torts § 414 cmt. c)).

Likewise, this is not a case in which YouTube simply provided Collabera with a safety manual and required that moderators be trained on YouTube's policies. For one thing, unlike lifting materials to a roof, a task for which a subcontractor might be expected to know and take the appropriate safety precautions, YouTube, not Collabera, is the expert in how to moderate the content posted to YouTube using YouTube's own software in light of YouTube's Community Guidelines. The training materials YouTube developed told content moderators how to do their jobs but not how to do them safely. ECF No. 1-1 ¶¶ 54–57. As the one who designed the content moderator's role, YouTube cannot fob its responsibilities off on Collabera. And whether Collabera was the sort of expert YouTube claims or whether Collabera had sufficient authority and flexibility to actually render content moderation safe are fact questions that cannot be answered on a motion to dismiss.

### 2. Texas recognizes negligent provision of unsafe equipment as part of a claim for negligent exercise of retained control.

YouTube insists that Texas does not recognize the negligent provision of unsafe equipment as an independent cause of action, but instead treats the provision of equipment as a factor in whether there is retained control. ECF No. 16 at 11–12. This is a distinction without a difference. Plaintiff alleges that YouTube provided an unsafe review platform, required its use, and knew that the SRT could not adequately protect content moderators from psychological trauma. ECF No. 1-1 ¶¶ 39–47, 65–69, 76. YouTube—not Collabera—had the ability to modify the content review platform, yet YouTube refused to do so. *Id.* ¶¶ 68–69. YouTube's provision of the content review platform thus constituted an actual

exercise of retained control, giving rise to liability regardless of whether negligent provision of unsafe equipment is an independent cause of action.[3]

YouTube's cases are either distinguishable or support Plaintiff's argument. In many of the cases, an owner's or general contractor's alleged fault was failing to ensure that the subcontractor followed the owner's required safety procedures. Here, Plaintiff alleges that it was YouTube's own requirements, which Collabera followed and could not alter, that were unsafe. ECF No. 1-1 ¶¶ 57, 60–62, 65–69. In *Shell Oil Co. v. Khan*, a gas station attendant was not provided with safety training required under Shell's contract with the station's lessee. 138 S.W.3d 288, 293–94 (Tex. 2004). According to the Texas Supreme Court, Shell's requirement created "a narrow duty to avoid increasing the risk of injury." *Id.* at 294 (citing *Koch Ref. Co.*, 11 S.W.3d at 156). That, of course, is precisely what Plaintiff alleges YouTube's onerous productivity requirements and its insufficiently safe moderation platform did—increased her risk of psychological injury. ECF No. 1-1 ¶¶ 57, 60–62, 65–69, 76.

Similarly, *Hoechst-Celanese Co. v. Mendez* held that "an employer who . . . provides detailed instructions on the means or methods to carry out a work order owes the independent contractor a duty of reasonable care to protect him from work-related hazards." 967 S.W.2d at 357 (emphasis added). Once again, YouTube provided detailed Community Guidelines, required that those be followed, and required that the determination of whether specific content violated those standards be done using the SRT at a rate of speed specified by YouTube. ECF No. 1-1 ¶¶ 55, 59, 65–69. Neither Collabera nor Plaintiff had the ability to moderate content in a safer way.

*Bell v. VPSI, Inc.* is a case concerning the contractual right of control, which, as discussed above, cannot be evaluated in the present procedural posture. 205 S.W.3d 706, 718 (Tex. App. 2006). And even if it could, the case reveals that "a general contractor owes a duty that any contractual safety requirements and procedures not unreasonably increase, rather than decrease, the probability and severity of injury." *Id.* at 721 (citing *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 608 (Tex. 2002)). While

---

[3] YouTube may also have had the contractual right to require use of its content review platform. As discussed above, this issue cannot be resolved without reviewing the language of the contract between YouTube and Collabera.

1  Collabera had control over the physical security of its premises, Plaintiff does not allege that her

2  workplace was unsafe but rather that her working conditions were unsafe—and that it was YouTube,

3  not Collabera, that set the "requirements and procedures" that "unreasonably increase[d] . . . the

4  probability and severity of [her] injury." *Id.*; *see also* ECF No. 1-1 ¶¶ 54–55, 57, 59–62, 65–69. *Victoria* is

5  also about the contractual right of control. 100 S.W.3d at 328. In that case, the contract allowed the

6  owner to inspect the work, a right that was merely "supervisory and . . . limited to ensuring [the

7  contractor's] overall compliance with the contract." *Id.* at 329. Plaintiff has alleged that YouTube could

8  do and actually did much more than merely retain the right to inspect Collabera's work. YouTube

9  controlled everything about the one aspect of her work that Plaintiff alleges caused her injury: the use of

10  the SRT platform to moderate the content posted YouTube in accordance with YouTube's precise and

11  detailed requirements and without adequate mental health supports within the SRT and elsewhere.

12  Hence, even if Texas law applies (and it does not), YouTube's motion to dismiss must be

13  denied as to Plaintiff's negligence claims.

14  **D.  Plaintiff states a sufficient UCL claim.**

15  **1.  Although she is located in Texas, Plaintiff can invoke the UCL's protections.**

16  Contrary to YouTube's protestations, the UCL applies to YouTube's misconduct because out-

17  of-state plaintiffs can seek California statutory remedies "when they are harmed by wrongful conduct

18  occurring in California." *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 224–25 (1999). All

19  that is required is that the injury occur in California or the defendant's conduct take place in California.

20  *See, e.g., Collazo v. Wen by Chaz Dean, Inc.*, No. 215CV01974ODWAGR, 2015 WL 4398559, at *3 (C.D.

21  Cal. July 17, 2015) (concluding that the "critical issue" for extraterritorial application of the UCL is

22  "where did the decisions regarding the alleged misconduct occur?"); *Tidenberg v. Bidz.com, Inc.,* No.

23  08–cv–5553, 2009 WL 605249, *4 (C.D. Cal. Mar. 4, 2009) ("The critical issues here are whether the

24  injury occurred in California and whether the conduct of the Defendants occurred in California. If

25  neither of these questions can be answered in the affirmative, then Plaintiff will be unable to avail herself

26  of [the UCL].").

27

28

And so, the question that must be answered is whether "all critical decisions" were made within California. *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013). From its California headquarters, YouTube made the relevant decisions, including what training to provide, what mental health supports to require, what productivity goals to set, and what features to include in the SRT. ECF No. 1-1 ¶¶ 51–75. As these harmful decisions were made in and implemented from California, Plaintiff can protect herself and the members of the proposed class with the UCL. YouTube's motion must be denied on this ground.

In an attempt to defeat this result, YouTube relies exclusively on *Sullivan v. Oracle Corp.* 51 Cal. 4th 1191, 1207 (2011). In *Sullivan*, the California Supreme Court concluded that the UCL did not apply to FLSA wage claims made by out-of-state plaintiffs for work performed outside of California. *Id.* at 1208. However, in *Sullivan*, the only California-based conduct was "[t]he decision-making process to classify [plaintiff-workers] as exempt from the requirement to be paid overtime wages." *Id.* at 1207. Because the unlawful conduct was the failure to pay overtime and not simply the classification decision, the court held that that single decision did not support application of the UCL to the plaintiffs' claims. *Id.* at 1208.

Here, of course, YouTube has not merely underpaid its workers, it has committed torts causing psychological and physical suffering. In that sense, this case is closer to those in which courts have approved the application of the UCL in favor of out-of-state plaintiffs. *See, e.g.*, *Collazo*, 2015 WL 4398559, at *5. Plaintiff has also alleged far more than a single California-based decision; she has, in fact, outlined an unbroken string of tortious misconduct. YouTube's many decisions that combined to create the conditions that injured Plaintiff and the other members of the proposed class all occurred in California. Therefore, it is entirely appropriate for Plaintiff to seek relief available under the UCL.

### 2. Plaintiff seeks equitable relief, not damages.

The UCL provides for injunctive relief. Cal. Bus. & Prof. Code § 17203. This is precisely the relief that Plaintiff seeks for herself and the members of the proposed class. ECF No. 1-1 ¶¶ 159–160, 175–176. Through her UCL claims, Plaintiff asks not for damages but rather for an injunction requiring YouTube to alter its policies and procedures to render content moderators' work safe as well as medical

monitoring, which can be a form of equitable relief under California law.

Medical monitoring allows recovery for "the cost of future periodic medical examinations intended to facilitate early detection and treatment of disease caused by a plaintiff's exposure to toxic substances." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1003 (1993). In *Potter*, a case brought by four landowners subjected to prolonged exposure to carcinogens from a nearby landfill, the California Supreme Court recognized the availability of medical monitoring. *Id.* at 1007. Although the *Potter* court used the term "damages" to describe medical monitoring, the court's reasoning drew heavily from that of the New Jersey Supreme Court in *Ayers v. Jackson Twp.*, 106 N.J. 557 (1987). According to that court, "the use of a court-supervised fund to administer medical-surveillance payments . . . is a highly appropriate exercise of the Court's equitable powers." *Id.* at 608.

Moreover, in a legal action for damages, all present and future harms are reduced to a single award with no prospect for further relief. Because Plaintiff demands an ongoing monitoring program, ECF No. 1-1 ¶¶ 160, 176, that relief can only be ordered by a court sitting in equity. Thus, this Court can and should conclude that medical monitoring is an equitable remedy under California law. As it is an equitable remedy, this Court may grant it under the UCL. *See* Cal. Bus. & Prof. Code § 17203.

### 3. Plaintiff has standing to ameliorate YouTube's deficient workplace safety practices.

Plaintiff also has the standing necessary to bring an action to modify workplace conditions for YouTube's content moderators. Under California law, "a person who suffered injury in fact and has lost money or property as a result of unfair competition" has standing to bring a UCL action. Cal. Bus. & Prof. Code § 17204. A former employee has standing to seek injunctive relief on behalf of a class of current and former employees. *See Rosenberg v. Renal Advantage, Inc.*, 11-CV-2152, 2013 WL 3205426, at *9–10 (S.D. Cal. June 24, 2013), *aff'd*, 649 F. App'x 580 (9th Cir. 2016). Because Plaintiff is a former employee who had to spend money for medical treatment, she has been injured economically by

YouTube's decisions to create unsafe working conditions. She therefore can seek injunctive relief under the UCL.[4]

### 4.   YouTube's negligence and unfair practices provide a basis for Plaintiff's UCL claim.

Plaintiff properly rests her first UCL cause of action for injunctive relief and medical monitoring on YouTube's negligence. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Such unlawful practices include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 833 (1994); *see also Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 680 (2006) ("[V]irtually any law or regulation—federal or state, statutory or common law—can serve as a predicate for a [UCL] unlawful violation."); *Cmty. Assisting Recovery, Inc. v. Aegis Sec. Ins. Co.*, 92 Cal. App. 4th 886 (2001) ("[A]n 'unlawful' business practice actionable under the UCL is one that violates an existing law, including case law . . . ."). As the Ninth Circuit has recognized, "California courts have not foreclosed common law theories as a basis for actions pursuant to § 17200." *Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 828 n.3 (9th Cir. 2003). Plaintiff alleges that YouTube violated the UCL through its negligent conduct, and negligence is a common law cause of action. Therefore, she has adequately stated a UCL claim.

Even assuming YouTube is correct about the negligence claims (and it is not), UCL claims may also be based on conduct that is "unfair." "'Unfair' simply means any practice whose harm to the victim outweighs its benefits." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (quoting *Saunders*, 27 Cal. App. 4th at 833-834). While Plaintiff does not dispute the importance of moderating content posted to YouTube to prevent the circulation of harmful material, the specific practice at issue is not content moderation itself. Rather the practice at issue is YouTube's decision to require that content moderation be performed in an unsafe manner. There is no social utility to YouTube's requirement that moderation be performed using an unsafe platform under conditions

---

[4] If the Court agrees with YouTube and dismisses Plaintiff's claims for an injunction ordering prospective changes to YouTube's policies and procedures, Plaintiff requests that this dismissal be without prejudice. *See Wasson v. Brown*, 316 F. App'x 663, 664 (9th Cir. 2009).

that effectively prohibit moderators from accessing adequate mental health support. Therefore, Plaintiff's UCL action also survives dismissal under the "unfair" prong.

### 5. Workers' compensation exclusivity does not bar Plaintiff's UCL claim.

In Plaintiff's fifth cause of action, she asserts that YouTube is liable under the UCL for specific violations of the California Labor Code if this Court determines that YouTube is her special employer. ECF No. 1-1 ¶¶162–178. In its motion, YouTube points to the well-known concept of workers' compensation exclusivity while ignoring the relief that Plaintiff actually seeks under the UCL: an injunction, which is not a claim for compensation. Hence, her claim falls outside the scope of the exclusivity provisions of the Workers Compensation Act ("WCA").

The WCA's purpose is to ensure that workers who sustain injuries arising out of their employment are provided with a "quick, simple and readily accessible method of claiming and receiving compensation." *Santiago v. Emp. Benefits Servs.*, 168 Cal. App 3d 898, 901 (1985). For this reason, the WCA provides that the right to recover compensation is . . . the sole and exclusive remedy of the employee . . . against the employer." Cal. Lab. Code § 3602(a). Nevertheless, California courts have long recognized that "the existence of a workers' compensation remedy does not by itself establish that the remedy is exclusive." *Collins v. Union Pac. R.R. Co.*, 207 Cal. App 4th 867, 876 (2012) (citing *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143 (1998)). Courts throughout the country have similarly recognized that "under no circumstances is a claim for injunctive relief from discrimination barred by the workers' compensation exclusive remedy provision." *Borchardt-Spicer v. G.A.F. Corp.*, 139 Mich. App. 658, 663 (1984); *see also Nelson v. U.S. Postal Serv.*, 189 F. Supp. 2d 450, 460 (W.D. Va. 2002) (workers' compensation exclusivity did not bar a plaintiff's claims for injunctive relief under Virginia law); *Conway v. Circus Circus Casinos, Inc.*, 116 Nev. 870, 875 (2000) ("We conclude that the exclusive remedy provision of the [Nevada workers' compensation law] does not bar injunctive relief."); *Shimp v. New Jersey Bell Tel. Co.*, 145 N.J. Super. 516, 524 (Ch. Div. 1976) (same under New Jersey law).

Here, Plaintiff seeks to enjoin YouTube's continued maintenance of unsafe working conditions; this is clearly injunctive relief, not compensation. She also seeks medical monitoring, which, as discussed above, is a remedy that may be awarded by a court sitting in equity. Therefore, because the

relief that she seeks is not "compensation," her UCL claim against YouTube as her special employer is not barred by the WCA.

## V.      CONCLUSION

A motion to dismiss requires only plausible allegations, which Plaintiff has made. Although California law applies to her negligence claims, Plaintiff has plausibly alleged that YouTube controlled the conditions of her work and that it did so negligently under the standards of both California and Texas. YouTube's negligence and unfair employment practices provide grounds for the injunctive relief that she seeks—medical monitoring and reform of dangerous practices that cause YouTube's content moderators to suffer severe psychological harm. She has met the standard necessary for her claims to proceed, and YouTube's motion must be denied.

If this Court grants the motion, Plaintiff respectfully requests leave to amend to address any deficiencies.

1

Dated: January 25, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

JOSEPH SAVERI LAW FIRM, INC.

By:  _/s/ Katharine L. Malone_
　　　　Katharine L. Malone
Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No.175489)
Kevin Rayhill (State Bar No.267496)
Katharine L. Malone (State Bar No.290884)
Keydon A. Levy (State Bar No.281372)
Kyle P. Quackenbush (State Bar No.322401)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
　　　　swillliams@saverilawfirm.com
　　　　krayhill@saverilawfirm.com
　　　　kmalone@saverilawfirm.com
　　　　klevy@saverilawfirm.com
　　　　kquackenbush@saverilawfirm.com

Lydia A. Wright (admitted _pro hac vice_)
Patrick D. Murphree (admitted _pro hac vice_)
Richard Yelton (admitted _pro hac vice_)
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
Email: lwright@burnscharest.com
　　　　pmurphree@burnscharest.com
　　　　ryelton@burnscharest.com

Daniel H. Charest (admitted _pro hac vice_)
Mallory T. Biblo (admitted _pro hac vice_)
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
Email: dcharest@bunscharest.com
　　　　mbiblo@burnscharest.com

_Attorneys for Plaintiff and the Proposed Class_