Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Kevin Rayhill (State Bar No. 267496)
Elissa A. Buchanan (State Bar No. 249996)
Abraham A. Maggard (State Bar No. 339949)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:  jsaveri@saverilawfirm.com
        swilliams@saverilawfirm.com
        krayhill@saverilawfirm.com
        eabuchanan@saverilawfirm.com
        amaggard@saverilawfirm.com

Daniel H. Charest (admitted *pro hac vice*)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
Email: dcharest@burnscharest.com

Patrick D. Murphree (admitted *pro hac vice*)
Harry R. Yelton (admitted *pro hac vice*)
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
Email: pmurphree@burnscharest.com
        ryelton@burnscharest.com

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JANE DOE**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**YOUTUBE, INC.**<br><br>*Defendant*. | Civil Case No. 4:20-CV-07493-YGR<br><br>**CO-LEAD COUNSEL FOR THE CLASS'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARD**<br><br>Date: February 21, 2023<br>Time: 2:00 p.m.<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Location: Courtroom 1 |

Civil Case No. 4:20-CV-07493-YGR

CO-LEAD COUNSEL FOR THE CLASS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARD

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 2:00 p.m. on February 21, 2023, Counsel for the Class will, and hereby does, move before the Honorable Yvonne Gonzalez Rogers, United States District Judge, at the United States Courthouse, 1301 Clay Street, Courtroom 1 – 4th Floor, Oakland, California, pursuant to Fed. R. Civ. P. 23(h) and 54(d) for the following:

- an award of attorneys' fees in the amount of $1,416,163.44 (30 % of the $4,720,544.80 Settlement Fund) plus interest;
- reimbursement of litigation expenses in the amount of $41,234.97; and
- a service award for the Class Representative in the amount of $20,0000.00.

This Motion is made on the grounds that (a) such fees are fair and reasonable in light of Plaintiff's Counsel's efforts in creating the Settlement Fund; (b) the requested fees comport with Ninth Circuit law in common fund cases; (c) the expenses for which reimbursement is sought were reasonably and necessarily incurred in connection with the prosecution of this action; and (d) a service award to the Class Representative is warranted for bringing this case.

This Motion is based upon this Memorandum of Points and Authorities, the Declaration of Steven N. Williams, the Declaration of Daniel H. Charest, the proposed order submitted herewith, all other records, pleadings and papers filed in this action; and upon such argument and further pleadings as may be presented to the Court at the hearing on this Motion.

Upon filing with the Court, this Motion will be available for review by Class Members on the settlement website established for this case, http://contentmoderatorytsettlement.com.

### STATEMENT OF THE ISSUES TO BE DECIDED

Whether the Court should (1) award the requested attorneys' fees in the amount of $1,416,163.44, which represents 30% of the Settlement Fund of $4,720,544.80; (2) order payment from the Settlement Fund of Class Counsel's expenses totaling $ 41,234.97 and (3) approve a service award to the Class Representative in the amount of $20,000.00.

///

///

Dated: November 18, 2022

Respectfully Submitted,

JOSEPH SAVERI LAW FIRM, LLP

By:   */s/ Steven N. Williams*
          STEVEN N. WILLIAMS

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Kevin Rayhill (State Bar No. 267496)
Elissa A. Buchanan (State Bar No. 249996)
Abraham A. Maggard (State Bar No. 339949)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
           swillliams@saverilawfirm.com
           krayhill@saverilawfirm.com
           eabuchanan@saverilawfirm.com
           amaggard@saverilawfirm.com

Daniel H. Charest (admitted *pro hac vice*)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
Email: dcharest@burnscharest.com

Patrick D. Murphree (admitted *pro hac vice*)
Harry R. Yelton (admitted *pro hac vice*)
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
Email: pmurphree@burnscharest.com
           ryelton@burnscharest.com

*Attorneys for Plaintiff and the Proposed Class*

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT...................................................................................1

II.   SUMMARY OF WORK BY PLAINTIFF'S COUNSEL..................................................2

    a.    Pre-filing Investigation...........................................................................2

    b.    Complaint and Motion to Dismiss Briefing .............................................3

    c.    Informal Discovery ................................................................................3

    d.    Settlement.............................................................................................4

III.  THE REQUESTED FEE AWARD IS REASONABLE. ...................................................4

    a.    The Common Fund Doctrine Applies and the Percentage-of-the-Fund Method for Calculating Fees is Appropriate. ...............................................4

    b.    An Upward Adjustment of the Benchmark is Justified...........................5

        i.    Class Counsel achieved an excellent result...............................6

        ii.   Class Counsel undertook risk on a contingent fee basis for a challenging case with little guiding precedent.............................7

        iii.  Class Counsel undertook a financial burden to prosecute the action........8

        iv.   Courts have awarded similar fees in less complex cases ..........................8

        v.    There is no windfall.................................................................9

IV.   CLASS COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARY ............10

V.    PAYMENT OF A SERVICE AWARD TO THE CLASS REPRESENTATIVE IS APPROPRIATE. .............................................................................................11

VI.   CONCLUSION ..................................................................................................12

CO-LEAD COUNSEL FOR THE CLASS'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARD

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15-MD-02617-LHK 2018 WL 3960068 (N.D. Cal. 2018) ................................................ 7

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................................................................... 9

*Boeing Co. v. Van Gemert*,
    44 U.S 472 (1980) .................................................................................................................... 4

*Garcia v. Schlumberger Lift Solutions*,
    No. 1:18-cv-01261-DAD JLT, 2020 WL 6886383 (E.D. Cal. Nov. 24, 2020) ........................ 9

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................................. 10

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ......................................................................................... 5, 6, 10

*In re Rite Aid Corp Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) .................................................................................................... 9

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................................................. 11

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) .................................................................................................. 7

*Spears v. First Am. Eappraiseit*,
    No. 08-CV-00868-RMW, 2015 WL 1906126 (N.D. Cal. Apr. 27, 2015) .................................. 7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................................................. 4, 11

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ..................................................................................................... 6

*Vincent v. Hughes Air West*,
    557 F.2d 759 (9th Cir. 1977) .................................................................................................. 10

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................................................ 5, 9, 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ...................................................................................................... 5

CO-LEAD COUNSEL FOR THE CLASS'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARD

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994)....................................................................................... 4

**Rules**

Fed. R. Civ. P. 1 .................................................................................................................. 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    PRELIMINARY STATEMENT

This is a novel case regarding legal claims that have not been fully adjudicated by any prior tribunal. The results obtained are entirely the result of the efforts and resources of the Class Representative and Class Counsel, all of which were expended with no assurance of success. Joseph Saveri Law Firm, LLP ("JSLF") and Burns Charest, LLP (collectively, "Class Counsel") are the first two firms to bring suit on the theory underlying this case and have been at the forefront of developing the legal claims of social-media content moderators who suffer from unsafe work environments. In addition to their expertise in this subject matter, both firms also have expertise in complex federal court class action litigation, and the financial wherewithal and determination to take on the largest companies in the world, represented by some of the finest law firms in the world.

While the Class Representative and Class Counsel believe that the claims presented are strong under California law, it is also true that this Court granted YouTube, Inc.'s ("YouTube") motion to dismiss the complaint with leave to amend, and that the pleadings were never closed. Contemporaneous with the Court's motion to dismiss ruling, the parties explored and then negotiated the framework of the settlement before the Court and the Class. Confirmatory discovery, both focused on fact issues and non-party Accenture's role in the case as well as expert analysis focused on the workplace changes that ultimately were included in the settlement.

The Class Representative and Class Counsel are proud of the result obtained here and believe that settlement is in the best interests of the Class. The settlement provides a recovery that, on a per capita basis, equals that achieved in the groundbreaking settlement *Selena Scola et al. v. Facebook*, a prior case brought by the same counsel on behalf of content moderators.[1]

The result achieved is excellent. Not only does each Class Member receive monetary compensation, but YouTube is also required to implement workplace changes that are intended to minimize, mitigate and alleviate the harms suffered by content moderators while performing their jobs.

---

[1] No. 18-CIV-05135 (Sup. Ct. Cal. San Mateo Cty.).

CO-LEAD COUNSEL FOR THE CLASS'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARD

Due to the novelty of the claims, the risk of further litigation and non-recovery, and the excellent results obtained, Class Counsel respectfully requests that the Court grant this Motion

## II.   SUMMARY OF WORK BY PLAINTIFF'S COUNSEL

Class Counsel has performed substantial work and dedicated significant money, time and resources over the past two years to facilitate the prosecution of the Class's claims against YouTube. Declaration of Steven N. Williams, ¶ 11 ("Williams Decl."); Declaration of Daniel Charest ("Charest Decl."), ¶ 7-8. This work included significant pre-filing investigations, full motion practice (including drafting two complaints and opposing a motion to dismiss), informal discovery, consultation with experts, and settlement negotiations to obtain both monetary and non-monetary compensation for the class. Williams Decl. ¶¶ 11-17; Charest Decl., ¶ 8.

### a.   Pre-filing Investigation

Class Counsel invested significant resources and time prior to filing Plaintiff's complaint. In 2018, Class Counsel brought the groundbreaking *Scola* case on behalf of content moderators working for Facebook; that case raised new and novel legal claims, which focused on preventing and remedying the significant physical, emotional, and mental effects, particularly Post-Traumatic Stress Disorder ("PTSD") that certain forms of content moderation may cause. Williams Decl., ¶ 14, Charest Decl., ¶¶ 5-6. Work on that case involved identifying the standard of care applicable to content moderation and the safeguards that could be implemented to protect moderators. Williams Decl., ¶ 14, Charest Decl., ¶¶ 5-6. Although the *Scola* case gave Class Counsel experience with the world of content moderation, the present case required a distinct investigation to identify YouTube's relevant business practices and the workplace conditions of YouTube's content moderators. Williams Decl. at ¶ 15. This investigation also involved engaging preeminent experts to assist Class Counsel in understanding issues arising from exposure to graphic content and the treatment necessary to address those issues. *Id*., at ¶ 16; Charest Decl., ¶ 8. In addition, Class Counsel conducted substantial fact investigation through conversations and interviews with numerous current and former content moderators for YouTube. Williams Decl., ¶ 12; Charest Decl., ¶ 8. Class Counsel engaged in this extensive investigative work to ensure that they had sufficient knowledge to effectively prosecute the Class's novel legal claims. Indeed, because of

CO-LEAD COUNSEL FOR THE CLASS'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARD

Class Counsel's subject matter expertise and experience in complex class action litigation, they brought about an excellent result in this case for a relatively low cost, relatively low lodestar, and with a minimum burden on Court resources.

### b.  Complaint and Motion to Dismiss Briefing

On September 21, 2020, Plaintiff filled a complaint in San Mateo Superior Court alleging that YouTube failed to meet its obligations to content moderators on its platform, resulting in heightened risk for and actual development of PTSD and other traumatic disorders. (ECF No. 1-1 at 4-32). On October 24, 2020, YouTube removed the case to this Court. (ECF No 1). The case was reassigned to the Hon. Yvonne Gonzalez Rogers on November 10, 2020. (ECF No. 9).

YouTube filed a motion to dismiss on December 2, 2020. (ECF No. 16). Plaintiff filed an opposition on January 25, 2021, (ECF No. 25), and YouTube replied on February 22, 2021, (ECF No. 26). The Court held a hearing on the motion to dismiss on July 13, 2021, (ECF No. 31) and granted the motion the next day (ECF No. 32). The parties then engaged in extensive informal discovery and settlement negotiations, including two sessions before the Hon. Rebecca Westerfield (ret.) of JAMS. The result of these sessions was an agreement on a settlement structure, to be informed by and having the unknowns filled in by informal discovery and investigation.

### c.  Informal Discovery

While conducting settlement discussions, Class Counsel also engaged in extensive informal discovery to ascertain sufficient information to make an informed decision regarding the pending settlement. Williams Decl. ¶ 12 Charest Decl. ¶ 8. Major objects of discovery were the number of Class Members (to ensure that the monetary relief was adequate), the employment arrangement and status of Class Members (to ensure notice for Class Members and to probe the relationship between YouTube and its vendor), and the current working environment for YouTube's content moderators (to ensure that the non-monetary relief would help to redress deficiencies in that environment). Williams Decl. ¶ 12. Class Counsel's efforts included significant information exchanges through calls and videoconferences with YouTube and its counsel, review of documents provided by YouTube, a subpoena to a non-party, meet-and-confer discussions with counsel for the non-party and resolution of objections, review of

CO-LEAD COUNSEL FOR THE CLASS'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARD

information produced by non-parties, discussions with YouTube employees, and discussions with many members of the proposed class. Williams Decl. ¶ 12; Charest Decl. ¶ 8. While formal discovery has not been conducted in this case, Class Counsel spent significant time, energy, and resources to fully understand the situation of Class Members and ensure the adequacy of the settlement.

### d. Settlement

While the initial mediation proceeded before and under the guidance of Judge Westerfield, the parties continued negotiations — through many contentious and detailed discussions about the settlement, specific issues in dispute, and pathways to success. Eventually, Plaintiff filed a motion for preliminary approval of settlement on July 12, 2022. (ECF 49). After a hearing on the proposed settlement, Plaintiff filed an amended complaint and supplement to the motion. (ECF Nos. 57 and 58). The Court granted preliminary approval and the certification of the class for settlement purposes on September 29, 2022, and appointed JSLF and Burns Charest as Class Counsel. (ECF No. 62).

### III.   THE REQUESTED FEE AWARD IS REASONABLE.

#### a. The Common Fund Doctrine Applies and the Percentage-of-the-Fund Method for Calculating Fees is Appropriate.

Class Counsel has conferred a significant benefit on the Class in the form of both a common cash fund and workplace changes to ameliorate the conditions causing harm to content moderators. The Supreme Court has explained that a "litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 44 U.S 472, 478 (1980); *Staton v. Boeing Co.,* 327 F.3d 938, 967 (9th Cir. 2003). The purpose of this doctrine is to encourage those who benefit from the creation of a common fund to "share the wealth with the lawyer whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1300 (9th Cir. 1994).

The settlement is of great benefit to the Class, providing total cash consideration of $4,720,544.80 and resulting in a gross award of $3,296.47 per Class Member. Each Class Member will receive a per capita distribution. The settlement also provides non-monetary compensation for the benefit of current and future content moderators that Plaintiff's experts estimate to be worth

approximately $3,900,000.00. Williams Decl. ¶ 8; ECF No. 58-3 at 6; ECF No. 58-4 at 5. Paying reasonable attorneys' fees from the common fund compensates Class Counsel for bringing and prosecuting this action and providing concrete relief to over 1,400 workers.

In common-fund cases, courts in the Ninth Circuit have discretion to determine attorneys' fees by either the "percentage-of-the-fund" method or the "lodestar" method. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 949 (9th Cir. 2015). Most courts have preferred the percentage-of-the-fund method, as it

> directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation. In contrast, the lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[]s district courts to engage in a gimlet-eyed review of line-item fee audits.

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005) (alterations in original) (citations and internal quotation marks omitted). When using the lodestar method, it is appropriate to conduct a lodestar cross-check to "confirm that a percentage of [the] recovery amount does not award counsel an exorbitant hourly rate." *Online DVD*, 770 F.3d at 949 (citation and internal quotation marks omitted).

Focusing only on the cash consideration, Class Counsel's efforts have created a common fund of $4,720,544.80. Class Counsel seek 30% of the common fund as fee award, which amounts to $1,416,163.44. Williams Decl., ¶ 8, Charest Decl., 12. Under either a "percentage-of-the-fund" or a "lodestar" method, Class Counsel's requested fee is deserved in light of the value of the extensive work performed, the result achieved for the Class, and the risk and expense of contingent-fee representation.

**b. An Upward Adjustment of the Benchmark is Justified.**

"[I]n this circuit, the benchmark percentage is 25%", which is a "helpful 'starting point'" for analysis. *Online DVD*, 779 F.3d at 949, 955 (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); and quoting *Vizcaino*, 290 F.3d at 1048). Because the benchmark is merely a starting point, the percentage award ultimately selected must be based on the circumstances of the individual case. *Vizcaino*, 290 F.3d at 1048. "This benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery

would be either too small or too large . . . ." *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1376 (9th Cir. 1993) (citation and internal quotation marks omitted). When evaluating a percentage-of-the-fund request for attorneys' fees, the Ninth Circuit requires district courts to consider the following factors: (1) whether counsel "achieved exceptional results for the class"; (2) "whether the case was risky for class counsel"; (3) "whether counsel's performance 'generated benefits beyond the cash settlement fund'"; (4) "the market rate for the particular field of law"; (5) "the burdens class counsel experienced while litigating the case (*e.g.*, cost, duration, foregoing other work)"; and (6) "whether the case was handled on a contingency basis." *Online DVD*, 779 F.3d at 954-55. (*citing Vizcaino*, 290 F.3d at 1048-50). In this case, these factors support an upward adjustment of the attorneys' fee award to 30% of the Settlement Fund.

### i. Class Counsel achieved an excellent result

Class Counsel secured a substantial recovery that is available to all Class Members. Under the settlement's terms, each Class Member is entitled to a pro rata gross payment of $3,296.47. The non-monetary consideration is well-considered and provides meaningful relief, going to the heart of the issues the Class Representative and Class Counsel sought to address: the impact of reviewing of graphic content on content moderators. Williams Decl., ¶ 6. This portion of the settlement includes expanded access to and availability of regular sessions with licensed and experienced clinicians trained in treating individuals suffering from trauma, peer support groups, access to an employee assistance plan, protection from retaliation for using these services, improved onboarding procedures, and provides transparent job descriptions. ECF No. 60-1 at 7-9. The significance of the non-monetary portion of the settlement is confirmed by Class Counsel's experts' $3,900,000.00 valuation of these benefits. Williams Decl., ¶ 8. Class Counsel was two firms of experienced lawyers. There was no need for unwieldy and potentially inefficient committees of plaintiff lawyers. Staffing this case with the two firms exclusively made it much more efficient than many other class cases, thereby fulfilling the mandate to "secure the just, speedy, and inexpensive" resolution of disputes. Fed. R. Civ. P. 1.

The settlement is also fair to the Class despite the early stage of the proceedings. When approving a pre-certification settlement, a court should engage in a probing inquiry for evidence of

collusion or other conflicts of interest in order to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs. *See, e.g., In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 782 (9th Cir. 2022); *see also Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048-49 (9th Cir. 2019). This includes looking for "subtle signs" of collusion such as "(1) 'when counsel receive a disproportionate distribution of the settlement;' (2) 'when the parties negotiate a "clear sailing" arrangement' (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (quoting *Bluetooth*, 654 F.3d at 947). None of those pitfalls (or any others) are here. In this settlement, every Class Member will receive a substantial and equal pro rata share. There is no basis to suggest that there has been any collusion or conflict interest; rather, Class Counsel and the Class Representative believe that this settlement is in the very best interests of the Class.

The excellent recovery obtained for the Class thus supports the requested fee award.

### ii. Class Counsel undertook risk on a contingent fee basis for a challenging case with little guiding precedent

Class Counsel assumed significant risk in undertaking this litigation. The duration and complexity of the case, and the novel legal theories on which it is based exacerbated the risk beyond that typical of a contingent-fee representation in a class action case. Williams Decl. ¶ 19; Charest Decl., ¶ 7. The case is being settled prior to a ruling on an anticipated renewed motion to dismiss, class certification, summary judgment, trial, and potential appeals, each of which posed a risk that Class Members would receive no recovery. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *12 (N.D. Cal. Aug 17, 2018) (describing the risks associated with potential adverse decisions "outside of the pleading stage."). Moreover, the absence of a decision on the merits of Plaintiff's novel claims in any prior litigation increased the risk of bringing the litigation in the first place. *See id.* (finding increased when a case presents a novel issue of first impression. Novel claims, especially unprecedent issues, support a larger percentage award of attorney fees. *See Spears v. First Am. Eappraiseit*, No. 08-CV-00868-RMW, 2015 WL 1906126, at *2 (N.D. Cal. Apr. 27, 2015)

(awarding 35% of $7,557,096.92 net settlement fund in a case where class counsel "faced at least three significant novel issues of law").

Class Counsel were and remain confident in Plaintiff's case and believe its strength helped lead to settlement, but the novelty of the legal claims at issue nevertheless increased the risk. Although the *Scola* case also resulted in a class settlement, the legal claims common to both cases have never been tested even on the pleadings, let alone at class certification or trial.[2] Class Counsel did not have the benefit of following successful analogous actions or government prosecutions, but instead took the risk to bring a case on the cutting-edge of legal development, on behalf of a client who bravely sought to protect a class of workers who were being treated less than fairly. Indeed, this Court already dismissed the claims once before the settlement, but Class Counsel maintained the effort and pressed the case forward. (ECF No. 32). That acceptance of risk and effort in the face of adversity achieved the result for the Class.

The risk Class Counsel willingly assumed supports an award of 30% of the Settlement Fund.

### iii.   Class Counsel undertook a financial burden to prosecute the action

In bringing this case, Class Counsel utilized their own funds and resources to prosecute the action. To date, Class Counsel has incurred expenses of $41,234.97. Williams Del., ¶ 9; Charest Decl., ¶ 10. These expenses were incurred without any guarantee of recovery. All costs and expenses were directly advanced by Class Counsel. Williams Decl. ¶ 28; Charest Decl. ¶ 7, 10. Because only two firms worked on this case, the burden on Class Counsel was higher than that found in cases in which multiple firms participated.

### iv.   Courts have awarded similar fees in less complex cases

Class Counsel's requested fee is further supported by the complexity and difficulty of the case. As mentioned previously, no case involving the same legal issues and claims has been adjudicated on the merits. While it is well established that novel claims can support a fee request, courts still grant upward departures from the 25% benchmark in significantly easier cases that do not confront novel

---

[2] In Scola, the parties had litigated intensely and had many discovery disputes. The case was settled while a fully briefed motion for judgment on the pleadings was pending.

issues of law. *See e.g.*, *Garcia v. Schlumberger Lift Solutions*, No. 1:18-cv-01261-DAD JLT, 2020 WL 6886383, at * 18, 21 (E.D. Cal. Nov. 24, 2020) (granting attorneys' fees of one-third of the gross settlement fund even though there were no "recent changes to wage and hour law that complicated the issues or created novel issues."*)*, *report and recommendation adopted*, No. 1:18-CV-01261-DAD-JLT, 2020 WL 7364769 (E.D. Cal. Dec. 15, 2020). Here, Class Counsel have developed the legal and factual basis for Plaintiff's claims, worked with experts to fully understand the potential harms of moderating graphic content and the safeguards that can be put in place to lessen that harm, identified the applicable standards of care for social media platforms using content moderators, and argued in support of those claims before the Court. Williams Decl., ¶¶ 14-15. This effort in a case involving novel legal claims thus supports Class Counsel's fee request.

###### v.   There is no windfall.

A cross-check of the requested fee with Class Counsel's lodestar shows that the requested fee is reasonable. The lodestar method requires that the Court determine the number of hours reasonably spent by counsel on a matter, multiply it by counsel's reasonable hourly rates, and then adjust the lodestar up or down based on various factors similar to those relevant to the percentage method. *Bluetooth,* 654 F.3d, at 941-42. A lodestar cross-check ensures that class counsel has done the work necessary to justify the fee sought. *Vizcaino*, 290 F.3d at 1050; *see also In re Rite Aid Corp Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) ("[T]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review billing records." (footnote omitted)).

Based on their hours worked at their standard hourly rates, JLSF's lodestar is $445,747.50 and Burns Charest's lodestar is $263,647.50. Williams Decl. 26; Charest Decl. ¶ 9. Class Counsel's total lodestar is thus $709,395.00. Williams Decl., ¶ 26. The requested fee of 30% of the common fund therefore amounts to a multiplier of 2.00. Courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases." *Vizciano*, 290 F.3d at 1051 (quoting *Wash. Pub. Power Supply*, 19 F.3d at 1300). When performing a lodestar cross-check in percentage-of-the-fund cases, courts commonly approve percentages that produce an award equivalent to the lodestar with a multiplier

between 1.5 and 3.0. *See id.* at 1051 & n.6. Therefore, in light of the excellent results obtained for the Class, the novelty of the legal claims, and the risks undertaken by Class Counsel, the lodestar cross-check confirms the appropriateness of the requested fee award.

## IV.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARY

Class Counsel seeks payment from the Settlement Fund of $41,234.97 in expenses necessarily incurred in the prosecution of this action, an amount representing 0.87% of the Settlement Fund.[3] Williams Decl., ¶ 9; Charest Decl., ¶10. The Ninth Circuit has recognized that in contingency-fee class actions "litigation expenses make the entire action possible." *Online DVD*, 779 F.3d at 953. Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary, and directly related to the prosecution of the action. *Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977); *see In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

The Williams and Charest Declarations provide an accounting of all costs for which reimbursement is sought. The primary expenses in this case were for experts, who were an essential component to securing robust and reliable non-monetary relief, and for JAMS, which bridged the gap and got the parties past several significant issues. Rather than large committees of attorneys from numerous law firms, JSLF and Burns Charest were the only law firms involved in investigating the case, prosecuting the action, and reaching settlement. As a result, Class Counsel have been able to avoid inefficiencies and duplication of work. Their ability to reign in hours and expenses has preserved the maximum benefit for the Class.

Class Counsel advanced these expenses, interest free, with no assurance that they would ever be recouped. Their request for reimbursement is therefore reasonable.

---

[3] Class Counsel notes that this total does not include the costs of settlement administration. However, those costs are estimated not to exceed $150,000. ECF No. 49 at 23. With those costs included, expenses would not exceed 4.05% of the Settlement Fund.

### V.      PAYMENT OF A SERVICE AWARD TO THE CLASS REPRESENTATIVE IS APPROPRIATE.

Class Counsel requests that the Court approve a service award to the sole Class Representative in this action in the amount of $20,000.00. But for this Class Representative, there would have been no case, and no relief to the Class. It took courage to be the Class Representative. In a similar action, the Defendant is alleged to have fired a plaintiff who brought a claim like the one here that challenged unhealthy workplace conditions. Williams Decl. ¶ 23; *see also Young et al.*, *v. ByteDance Inc., et al*., No. 3:22-cv-01883VC (ND Cal. Nov. 9, 2022) (ECF No. 50, ¶ 67). This Class Representative had every reason to be concerned that she might face retaliation as well when she took on not only one of the world's most powerful corporations, but also one of the greatest amassers of data in history. There was no way for the Class Representative to be assured that her identity could be kept confidential. Still, the Class Representative chose to work diligently with Class Counsel to assist in helping her fellow content moderators improve their working conditions and mental health. The Class Representative worked closely with Class Counsel on this case from its inception to the present.

Service awards encourage people to be plaintiffs in class actions where wrongs might go unremedied if no one were willing to take on powerful interests. "Incentive awards are fairly typical in class action cases" as they are intended "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958-59 (9th Cir. 2009). Service awards are evaluated in light of "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton,* 327 F.3d at 977 (citation and internal quotation marks omitted).

The Class Representative assisted Class Counsel by consulting regularly with attorneys, providing input regarding litigation and settlement strategy, producing informal discovery, consulting with counsel during mediation sessions, monitoring media coverage and research, and discussing parameters for settlement. Williams Decl., ¶ 22. This was all done at great personal risk to the Class

Representative, who feared retaliation, which would deprive her of her primary source of income. Williams Decl. ¶ 22. This work was further conducted without promise of a service award. Williams Decl. ¶ 22. The Class Representative spent significant time, energy, and effort in assisting Class Counsel in this case, including over 50 hours of her own time. Williams Decl. ¶ 22. The Class Representative still fears retaliation by YouTube, and thus Class Counsel will seek leave with the Court to file a motion to have the Class Representative's declaration provided for in camera review so as to continue to protect her identity. Williams Decl. ¶ 23.

For all of these reasons, this Court should approve a service award of $20,000 for the Class Representative.

## VI.    CONCLUSION

For the reasons set forth above, Class Counsel requests the Court grant their Motion for payment of $1,416,163.44 in attorneys' fees, $41,234.97 in reimbursable costs, and a service award of $20,000.00 to the Class Representative.

///

///

///

Dated: November 18, 2022

Respectfully Submitted,

JOSEPH SAVERI LAW FIRM, LLP

By: */s/ Steven N. Williams*
　　STEVEN N. WILLIAMS

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Kevin Rayhill (State Bar No. 267496)
Elissa A. Buchanan (State Bar No. 249996)
Abraham A. Maggard (State Bar No. 339949)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
　　　swilliams@saverilawfirm.com
　　　krayhill@saverilawfirm.com
　　　eabuchanan@saverilawfirm.com
　　　amaggard@saverilawfirm.com

Daniel H. Charest (admitted *pro hac vice*)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
Email: dcharest@burnscharest.com

Patrick D. Murphree (admitted *pro hac vice*)
Harry R. Yelton (admitted *pro hac vice*)
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
Email: pmurphree@burnscharest.com
　　　ryelton@burnscharest.com

*Attorneys for Plaintiff and the Proposed Class*

1

**CERTIFICATE OF SERVICE**

2

     I hereby certify that on November 18, 2022, I electronically filed the foregoing with the Clerk

3

of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties

4

of record electronically by CM/ECF.

5

                              /s/ *Steven N. Williams*

6

                               Steven N. Williams

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28